(95 Misc. Rep. 443)

## In re BORDEN'S ESTATE.

(Surrogate's Court, New York County. May 25, 1916.)

1. COMMON LAW ⊜8—PRINCIPLES ADOPTED—TIME.

Principles of the common law developed in England after the American Revolution are not controlling in the courts of the United States.

[Ed. Note.—For other cases, see Common Law, Cent. Dig. § 8; Dec. Dig. ⊜8.]

2. GOOD WILL ⊜2—NATURE AND ELEMENTS.

"Good will" is that economic value recognized in law and denoting the chance of future profit while carrying on an established business of repute in public consideration.

[Ed. Note.—For other cases, see Good Will, Cent. Dig. § 1; Dec. Dig. ⊜2.

For other definitions, see Words and Phrases, First and Second Series, Good Will.]

3. PARTNERSHIP ⊜257—GOOD WILL—HOW VALUED.

The chance of future profit arising from good will is to be measured in terms of value by past profits, with due allowance for loss of personal services of a deceased partner, where such service was of special and inseparable advantage to the business undertaking.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 563; Dec. Dig. ⊜257.]

4. PARTNERSHIP ⊜67—RIGHTS OF PARTNERS—GOOD WILL.

Good will of a partnership belongs primarily to the partnership as a whole.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 95–100; Dec. Dig. ⊜67.]

5. PARTNERSHIP ⊜257—GOOD WILL—SALE OR TRANSFER.

Good will of a partnership may be the subject of disposition or contract inter vivos, or may be dealt with in the ordinary channels of posthumous succession.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 563; Dec. Dig. ⊜257.]

6. PARTNERSHIP ⊜257—RIGHTS OF PARTNERS—GOOD WILL.

A contract relating to partnership good will affords no exception to the rules governing contracts generally, so that it may provide that on the death of one partner the good will shall belong to the survivors.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 563; Dec. Dig. ⊜257.]

7. TAXATION ⊜879(1)—TRANSFER TAX—PROPERTY SUBJECT.

Where a partnership contract, providing that on death of one member the good will should belong to the survivors, operated as a present assignment for value inter vivos, it would be enforced in equity, leaving nothing to pass by posthumous succession.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. ⊜879(1).]

8. PARTNERSHIP ⊜67—GOOD WILL—FIRM NAME.

The firm name always constitutes a part of the good will of a partnership.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 95–100; Dec. Dig. ⊜67.]

9. TAXATION ⊜895(1)—INHERITANCE TAX—VALUATION.

Where a partnership contract provided that on death of a member the survivors should have the option to carry on the business and use his

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

capital until dissolution by time limitation, the value of the right to continue such investment was so speculative and incapable of ascertainment, owing to possible optional termination, as to be disregarded in estimating value of decedent's interest in the partnership.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714, 1716; Dec. Dig. ☜895(1).]

10. PARTNERSHIP ☜256—CONTRACTS—CONSTRUCTION—RIGHTS OF ESTATE OF DECEASED PARTNER.

Where a partnership agreement provided that on death of any partner the right to use the firm name should belong to the survivors, or on dissolution of the firm to the then senior partner, legal representatives of a deceased partner have no right or interest in the use of the firm name.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 562; Dec. Dig. ☜256.]

11. PARTNERSHIP ☜256—CONTRACTS—CONSTRUCTION—RIGHTS OF ESTATE OF DECEASED PARTNER.

Where a partnership contract provided that on death of a member the survivors should have the option to carry on the business and use the decedent's capital and the firm name until dissolution by time limitation, the survivors could not be required to pay the decedent member's estate any portion of the value of the good will represented by the firm name.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 562; Dec. Dig. ☜256.]

12. TAXATION ☜879(1)—TRANSFER TAXES—PROPERTY SUBJECT.

Under Transfer Tax Law (Consol. Laws, c. 60) § 220, subd. 4, providing for a transfer tax on property when the transfer is by deed, grant, bargain, sale or gift intended to take effect in possession or enjoyment at or after death, the transfer tax is not assessable on transfers made for a valuable consideration; but, although from time to time the title of the act has been changed, it applies, as always, to gifts, legacies, and collateral inheritances.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. ☜879(1).]

Proceeding to assess the transfer tax on the estate of Matthew C. D. Borden, deceased. From an order of the appraiser assessing the tax, the State Comptroller appeals. Affirmed.

Lafayette B. Gleason, of New York City (William W. Wingate, of Brooklyn, of counsel), for appellant.

Shearman & Sterling, of New York City (John A. Garver, of New York City, of counsel), for respondents.

FOWLER, S. The state comptroller has appealed from the order assessing a tax on this estate, and contends that the appraiser erred in reporting that the decedent's interest in the good will of the firm of M. C. D. Borden & Sons did not constitute an asset of the estate subject to taxation under the provisions of the Transfer Tax Law. This is the only question raised by the appeal.

[1] This matter concerns only that subtle entity which is known to our modern jurisprudence as "good will." In various common-law countries the emergence of the legal conception of good will has pursued different courses. In all systems "good will" is a modern conception of an intangible res, recognized as property. In the country of the original common law of English-speaking peoples, the particulars of good will are inseparably associated with the Chancellorship of

Lord Eldon. As Lord Eldon came too late in the history of equity jurisprudence to belong to our political hierarchy, the doctrines of that distinguished judge do not form part of our jurisprudence. Good will is one of the matters which our post-revolutionary courts are free to develop for themselves without reference to the authority of the older common-law courts. In this department of our law, the late English adjudications have no force.

[2-5] The definitions of "good will" are many and irregular, and I prefer to define it, for myself, as that economic value recognized in law and denoting the chance of future profit while carrying on an established business of repute in public consideration. This chance of future profit has been rightly, I think, determined to be well measured in terms of value by past profits, but always with due allowance for the loss of personal service of the deceased partner, where that service was of special and inseparable advantage to the business undertaking. Good will, as so defined, belongs primarily to the partnership as a whole. Like any existing thing of recognized value it may be the subject of disposition or contract inter vivos, or it may be dealt with in the ordinary channels of posthumous succession. In the instance of posthumous succession it may be subject to the tax called generically "death duties." But that point is not now here.

[6, 7] When good will is dealt with in the realm of contracts inter vivos it is governed by the rules regulating other contractual dispositions of property. A contract relating to good will, in other words, affords no exception to the rules governing contracts generally. A partnership contract may expressly provide that inter se on the death of one partner the "good will" shall belong to the survivors. This was recognized in the famous case of Wederburn v. Wederburn (No. 4) 22 Beav. 84. Here the contract operates as a present assignment for value and is not a voluntary conveyance. If a contract so provide there is then nothing left to pass to the successors of the deceased partner by any mode of posthumous succession. The contract is inter vivos and made for a valuable consideration. The entity vests in the surviving partners by force of the terms of the express contract of partnership; it is based on a sufficient and valuable consideration to be enforced in a court of equity. At this place it should be noticed that Lord Eldon thought good will always went to the surviving partner, without any contractual assignment; but this is not in accord with modern authorities. That good will may now pass by express contract to surviving partners I have never seen doubted. Churton v. Douglas, Johns. Eng. Ch. 174; Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526.

[8] With this general reference to the fundamental principles, which, I assume, under our law, now govern the devolution of good will, let me point out, before proceeding to the particular features of this issue now before me for solution, that the "firm name" always constitutes a part of good will in any aspect, and under certain circumstances it may be the most valuable part. Churton v. Douglas, Johns. Eng. Ch. 174; Rodgers v. Nowill, 6 Hare, 325. After this somewhat technical, but condensed, review of general principles, I can now proceed less abstractly and more safely to the consideration of the res sub judice.

[9] The decedent was a member of the firm of M. C. D. Borden & Sons. The firm was organized for the purpose of carrying on a general dry goods commission business. The partnership agreement provided that the partnership should commence on the 1st day of July, 1910, and terminate on the 1st day of July, 1913. The members of the partnership were Matthew C. D. Borden, the decedent, and his two sons, Bertram H. Borden and Howard S. Borden. The decedent contributed $1,000,000 to the partnership, and his sons contributed $75,000 and $25,000 respectively. The sixth paragraph of the partnership agreement provides that the partnership shall not be dissolved by the death of any of the partners; that the capital of a partner dying during the continuance of the partnership shall remain with the firm until the termination of the partnership by time limitation; that the surviving partner or partners shall have the right at their option to continue the business for the remainder of the partnership term under the firm name of M. C. D. Borden & Sons, and that the estate of the partner so dying shall be entitled to the same profits in the business as the deceased partner would be entitled to if he were living. Under this paragraph of the partnership agreement the decedent could not transfer by will any interest in the partnership name, as that became by virtue of the partnership agreement, the property of the surviving partners. Apart from his investment in the partnership the decedent could only transfer by will his right to continue his investment in the business until the termination of the partnership by time limitation. Whether this was an asset or a liability was purely speculative, being dependent upon whether the business was profitable or otherwise. He died on the 27th day of May, 1912, and the partnership would expire by time limitation on the 1st day of July, 1913. The surviving partners could terminate the partnership at any time after the death of the decedent, as there was nothing in the partnership agreement which compelled them to continue the partnership after his death. Therefore the value of the right given by the partnership agreement to continue the decedent's investment in the partnership until its termination by time limitation is so speculative, so incapable of ascertainment with reasonable certainty, that it may be disregarded in estimating the value of the decedent's interest in the partnership.

[10] Paragraph "seven" of the partnership agreement provides:

"Upon the death of any of the partners the surviving partners or partner shall have the exclusive right to the use of the said firm name of M. C. D. Borden & Sons."

Under this paragraph the legal representatives of the decedent had no right to or interest in the firm name, the use of the name being given exclusively to the surviving partners.

Paragraph "twelve" provides that upon the dissolution of the partnership the partner, who for the time being shall be the senior member of the firm, shall have the exclusive right to use the firm name. This paragraph deprives not only the legal representatives of a deceased partner of any interest in the firm name, but also the junior surviving member. If the decedent's sons continued the partnership until July 1, 1913, when it expired by limitation, the senior member of the firm at that time became entitled to the use of the firm name as his indi-

vidual property, so that even if the partnership was continued until July 1, 1913, and the testator's investments in the partnership remained intact until that time, his legal representatives would have no right to or interest in the firm name, that having been given by the partnership agreement to the person who was then the senior member of the firm.

[11] The state comptroller also contends that, while paragraph "seven" of the partnership agreement gives the surviving partners an absolute right to use the firm name, it does not necessarily follow that the surviving partners could not be compelled to pay the representatives of a deceased partner the value of his interest in that part of the good will represented by the firm name. Assuming that the language of paragraph "seven" would bear such a construction, the state comptroller fails to indicate how the value of such an interest may be ascertained. Under the partnership agreement the firm name became, upon the death of the decedent, the exclusive property of the surviving partners. If it is exclusively the property of the surviving partners it cannot become, during the continuance of the original partnership, the property of any other person. The interest of the deceased partner in the firm name could not be sold, because no one would purchase an interest which could not be reduced to possession, since the entire firm name was, by the partnership agreement, the exclusive property of the surviving partners. This contention of the state comptroller is therefore untenable. But I am inclined to think that the language of the partnership agreement will not bear the strained construction placed upon it by the state comptroller, and that it is obvious from the provisions of the entire agreement that the parties thereto did not intend that the representatives of a deceased partner should receive from the surviving partners any financial consideration on account of the deceased partner's interest in the firm name.

[12] There remains the contention of the state comptroller that the transfer of decedent's interest in the good will to the surviving partners by virtue of the partnership agreement constituted a taxable transfer under the provisions of the Transfer Tax Law. The state comptroller predicates his contention upon the use of the words, "when the transfer is * * * by deed, grant, bargain, sale or gift * * * intended to take effect in possession or enjoyment at or after such death," in subdivision 4 of section 220 of the Tax Law. This would necessitate a construction of the transfer tax statute which would make it applicable to transfers effected under a contract or agreement made for a valuable consideration. The first statute which was passed in this state for the purpose of imposing a tax upon the estates of deceased persons was entitled "An act to tax gifts, legacies and collateral inheritances in certain cases." This was passed in 1885 and was amended in 1887 and 1889, the title remaining the same. Under this act it was provided that any property "transferred by deed, grant, sale or gift. intended to take effect in possession or enjoyment after the death of the grantor or bargainor" was, with certain exceptions subject to tax. In 1892 (Laws 1892, c. 399) the Legislature materially amended the statute and entitled it "An act in relation to taxable transfers of property." Section 1 specified the particular transfers which

would, under the act, be taxable transfers. These were a transfer by will or by the intestate laws of this state, and also a transfer of property "by deed, grant, bargain, sale or gift made in contemplation of death of the grantor, vendor or donor, or intended to take effect, in possession or enjoyment, at or after such death."

It is therefore manifest that the Legislature, in changing the title from "An act to tax gifts, legacies and collateral inheritances" to "An act in relation to taxable transfers," did not change the character of the transfers that were taxable under the act of 1885, and which were concededly limited to gifts, legacies, and collateral inheritances. The statute in force at the present time is entitled "An act in relation to taxation," and begins by enumerating the transfers that are taxable. It incorporates the language above quoted from the acts of 1885 and 1892 as to transfers by bargain or sale. I think that the Legislature did not intend, in the various enactments in relation to taxable transfers, that a tax should be imposed upon the transfer of property effected by a deed or contract which was made for a valuable consideration. The United States Supreme Court in Magowan v. Illinois Trust Co., 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037, held that a similar statute by the state of Illinois imposed a tax on succession and not on the property. In Matter of Miller, 77 App. Div. 473, 78 N. Y. Supp. 930, the judge who wrote the opinion said:

"I do not consider that the statute has reference to transfers made upon a valuable consideration, but that it relates merely to voluntary transfers without consideration."

Matter of Spaulding, 49 App. Div. 541, 63 N. Y. Supp. 694, affirmed 163 N. Y. 607, 57 N. E. 1124, and Matter of Baker, 83 App. Div. 530, 82 N. Y. Supp. 390, affirmed 178 N. Y. 575, 70 N. E. 1094, are to the same effect. In the Matter of Hess, 110 App. Div. 476, 96 N. Y. Supp. 990, the court said that the transfer tax is imposed upon the right of succession and not upon property. In Matter of Heiser, 85 Misc. Rep. 271, 147 N. Y. Supp. 557, and Matter of Vietor, 160 App. Div. 32, 144 N. Y. Supp. 918 (opinion reported in Chrystie, on Inheritance Tax, page 714), I had occasion to consider this question, and I then held that the Transfer Tax Act does not apply to a transfer inter vivos made for a valuable consideration. The dictum of Chief Justice Cullen in Matter of Keeney, 194 N. Y. 281, 87 N. E. 428, while entitled to great weight as indicating that there might be a question as to whether the Transfer Tax Act applied exclusively to voluntary transfers or gifts, is nevertheless not an authority for the proposition that the act applies to transfers made for a valuable consideration. That question was not before the court for determination, and the learned Chief Justice expressly refrained from deciding it.

As I consider that the decisions above quoted are conclusive upon the question, so far as this court is concerned, it is unnecessary for me to refer to the constitutional objections that might be raised to a statute which attempted to impose a tax upon the transfer of property effected by a contract or agreement executed for a valuable consideration.

The order fixing tax will be affirmed.