**McCLENNEN et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 3786.

Circuit Court of Appeals, First Circuit.

Nov. 4, 1942.

Allison L. Newton and Nutter, McClennen & Fish, all of Boston, Mass., for petitioners.

Edward H. Hammond, Sp. Asst. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., and J. P. Wenchel, Chief Counsel, and Ralph F. Staubly, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for the Commissioner.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Placing their chief reliance upon Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, the petitioners, as executors under the will of George R. Nutter, deceased, seek a review by us of a decision by the Board of Tax Appeals sustaining in part the Commissioner's determination of a deficiency in the estate tax of Mr. Nutter. The Commissioner conceded error as to one item, in respect to which the Board made appropriate adjustment in redetermining the deficiency.

George R. Nutter had been a partner in the firm of Nutter, McClennen & Fish, practising law in Boston, Massachusetts. The firm kept its accounts on the cash receipts and disbursements basis. Its receipts were derived solely from personal services. Under the partnership agreement Mr. Nutter's share of the firm's net profits was 8%. The agreement also contained the following provision:

"On the retirement of a partner or on his death—the others continuing the business—the retiring partner or his estate in the case of his death shall, in addition to his percentage of net profits of the Firm received by it in cash up to the date of such death or retirement, also receive the same percentage of net profits of the Firm received by it in cash until the expiration of the eighteen (18) calendar months next after such retirement, or death, and this shall be in full of the retiring or deceasing member's interest in the capital, the assets, the receivables, the possibilities and the good will of the Firm. The continuing members shall have the right to the good will and the use of the Firm name except that the deceasing or retiring member's name shall not be used without his written consent or that of his estate.

"The present book value of the Plant, Books, etc., and the Cash Capital of the Firm used to carry uncollected disbursements, etc., shall be furnished in accordance with the proportions of the partners' profit sharings for 1936. This will be accomplished by appropriate debits and credits on the books. These capital items are to be readjusted from time to time as profit sharing percentages change."

Mr. Nutter died on February 21, 1937. The balance sheet of the partnership, as of

the date of Mr. Nutter's death, indicates the interests of the partners in the firm assets by reference to accounts described as follows: "Capital Account," $12,375, "Plant Account," $8,932.44, and "Undistributed Profits," $73,634.50. The share of the deceased in these three accounts was, respectively, $1,031.25,[1] $744.37,[1] and $6,136.21. The capital account represents the interest of the partners in a working cash balance, and the plant account represents the interest of the partners in such items as books, furniture, and other fixtures in the law office. The firm owned a lease upon its offices, ending February 28, 1939. It was found by the Board that the firm enjoyed good will, in which the decedent had an interest and to which he contributed.

At the date of Mr. Nutter's death the firm and the members thereof had rendered legal and related services for which payment had not been received. Some of such work had been completed and some had not been completed on February 21, 1937. No consideration was given to such completed and partially completed services, which had not been paid for, in computing Mr. Nutter's share, amounting to $6,136.21, of the undistributed profits of the firm at the date of death.

After the death of George R. Nutter the other partners continued the business. Eight per cent of the net profits of the firm for the 18 calendar months next after the death, computed on the basis of cash receipts and disbursements, amounted to $34,069.99, which amount was paid over to the petitioners as executors. Of this amount $28,069.46 represented 8% of the net profits for the period of the year next after the death, and the remainder represented 8% of the net profits for the last six months of the agreed 18 months' period.

Petitioners filed an estate tax return with the Collector of Internal Revenue at Boston, and paid the tax thereon shown to be due. On the said return they duly elected to have the property includable in the gross estate valued as of one year after decedent's death, in accordance with the method authorized by § 202 of the Revenue Act of 1935, 49 Stat. 1022–1023, 26 U.S.C.A. Int. Rev.Acts, page 805. The sum of $6,136.21, which had been received by the executors as representing the decedent's share of the undistributed profits as of the date of the death, was included in the estate tax return as part of the decedent's gross estate. But beyond this nothing was included on account of the value of the decedent's interest in the partnership.

In his notice of deficiency the Commissioner determined that $34,069.99 should have been included in the gross estate as the value of decedent's "interest in partnership Nutter, McClennen & Fish." The Board has upheld the Commissioner in this determination. We think the Board was right.

 In the absence of a controlling agreement in the partnership articles the death of a partner dissolves the partnership. The survivors have the right and duty, with reasonable dispatch, to wind up the partnership affairs, to complete transactions begun but not then finished, to collect the accounts receivable, to pay the firm debts, to convert the remaining firm assets into cash, and to pay in cash to the partners and the legal representative of the deceased partner the net amounts shown by the accounts to be owing to each of them in respect of capital contributions and in respect of their shares of profits and surplus. The representative of a deceased partner does not succeed to any right to specific partnership property. In substance the deceased partner's interest, to which his representative succeeds, is a chose in action, a right to receive in cash the sum of money shown to be due him upon a liquidation and accounting. These substantive results may be rationalized upon a theory of the partnership "entity". Cf. Learned Hand, J., in Re Samuels & Lesser, D.C.S.D.N.Y.1913, 207 F. 195, 198. The same substantive results are reached under the Uniform Partnership Act which, in form at least, proceeds on the aggregate theory. See Crane, The Uniform Partnership Act—A Criticism, 28 Harv.L. Rev. 762 (1915). That act, which is law in Massachusetts, conceives of the partner as a "co-owner with his partners of specific partnership property holding as a tenant in partnership"; but provides that on the death of a partner "his right in specific partnership property vests in the surviving

---

[1] These two amounts are slightly more than 8% of the total capital account, and plant account, respectively. This is because under the partnership agreement E. Louise Malloch, an employee and not a partner of the firm, is entitled to receive a share in the total earnings of the firm but has no share in its "capital" or "plant" account.

partner or partners". Another enumerated property right of a partner, "his interest in the partnership", is described as "his share of the profits and surplus, and the same is personal property", regardless of whether the firm holds real estate or personalty or both. See Mass. G.L. (1932 Ed.) c. 108A, §§ 24, 25 and 26; see also §§ 30, 33, 37, 38(1), 40, 43.

■ This chose in action to which the representative of the deceased partner succeeds, the right to receive payment of a sum of money shown to be due upon a liquidation and accounting, is of course a part of the deceased partner's wealth, and includable in the decedent's gross estate for purposes of computing the estate tax by virtue of the comprehensive definition in § 302 of the Revenue Act of 1926, 44 Stat. 70, 26 U.S.C.A. Int.Rev.Acts, page 227. This is none the less true even though the net amount thus shown to be due to the estate is derived in whole or in part from past earnings or profits of the partnership resulting from personal services—profits which the decedent, if he had lived, would have had to report as income. The valuation of this chose in action might be a matter of difficulty, especially in the case of a partnership which cannot be speedily liquidated and whose accounts are complicated. Nevertheless, for estate tax purposes, the valuation must be made by the legal representatives of the deceased partner, on the basis of the best evidence available at the applicable valuation date.

In the case at bar, if there had not been the controlling provision in the partnership articles, above quoted, or if the survivors had not come to some agreement otherwise with the executors of Mr. Nutter, the survivors would have had to proceed to wind up the affairs of the partnership, to conclude all unfinished legal business on hand at the date of the death, to realize upon all of the assets of the firm, tangible or intangible, to pay the debts, to return to Mr. Nutter's estate his contribution of capital, if any, and to pay to his estate in cash the amount shown to be due in respect of his "interest in the partnership", that is, his "share of the profits and surplus", as determined upon an accounting. Among other things to be taken into account, "the earned proportion of the unfinished business" would have had "to be valued to determine the decedent's interest in the partnership assets". Helvering v. Enright's Estate, 1941, 312 U.S. 636, 641, 61 S.Ct. 777, 780, 85 L.Ed. 1093; United States v. Carter, 5 Cir., 1927, 19 F.2d 121.

To obviate the necessity of a liquidation, or to eliminate accounting difficulties[2] in determining the value of the deceased partner's interest, partners often make specific provision in the partnership articles.

Sometimes the partnership agreement merely provides for the postponement of liquidation, say, to the end of the term for which the partnership was created. Thus, a partnership agreement between A, B and C might provide that "should any partner die during the term of said co-partnership the firm shall not be dissolved thereupon, but the business shall be continued by the survivors until the expiration of said partnership term, the estate of the deceased partner to bear the same share in profits and losses as would have been received and borne by the deceased partner had he lived". Under such an agreement, if A dies, B and C do not buy out A's interest in the partnership. Unless more appears, A's executor does not become personally liable as a general partner, Butcher v. Hepworth, 1889, 115 N.Y. 328, 339, 22 N.E. 160, 163 et seq. Nor is A's general estate in the executor's hands liable as a partner for new debts created by B and C in continuing the business. Stewart v. Robinson, 1889, 115 N.Y. 328, 22 N.E. 160, 163, 5 L.R.A. 410. For the remainder of the term, A's share already embarked in the business remains in, subject to the risks of the business. It would seem not improper to describe the continuing business as now being owned by B and C as general partners, with A's estate (or A's executor as trustee under the will of A) as a limited partner therein, sharing in the profits, but not liable beyond the amount or interest already embarked in the business.

In the case just supposed, the chose in action, the right to which A's executor succeeds, would have to be included as part of the gross estate for estate tax purposes. It is a right to a fixed share of the profits of the business during the continuance of the term, plus a right to receive in cash the amount due to A's estate upon a final

2 These difficulties, in the case of a law firm with a lucrative practice, were alluded to in Helvering v. Enright's Estate, 1941, 312 U.S. 636, 643, 61 S.Ct. 777, 85 L.Ed. 1093.

liquidation and accounting after the expiration of the term. This right in its entirety is an asset of A at the date of his death; and the value of this right as of the date of the death or the optional date one year later, with due discount for postponement of payment and other contingencies, would be included in computing the value of the gross estate. Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, was a peculiar case on its facts and in the way the case came up; but we do not understand this case to hold that a right to receive future income payments is not "property" includable in the gross estate.[3] A similar instance is the case of a decedent who dies possessed of a bond for $1,000 payable in ten years bearing interest at 6%. The bond in its entirety may be valued at par at the date of the death, and this amount will be included in the gross estate. But this valuation embraces two elements, (1) the present value of the bondholder's right to receive a principal payment of $1,000 ten years hence, and (2) the present value of the bondholder's right to receive periodic interest payments until the bond is due. If the bondholder had lived he would have had to report the interest payments as income; nevertheless, upon his death his right to receive such future income payments would be in effect included in his gross estate. So if a creditor lends a sum of money to a partnership under a contract whereby the principal sum is to be repaid at the end of ten years, and meanwhile, in lieu of a fixed rate of interest, the creditor is to receive a share of the profits, the periodic receipt of such profits would be income to the creditor; but if the creditor should die there would have to be included in his gross estate not only the right to receive future repayment of the principal but also the right to receive a share of the profits for the balance of the term of the loan. Likewise if a life insurance agent,

after the termination of his agency, has a contract right to renewal commissions payable to him for services which had previously been rendered in writing policies of insurance, the subsequent receipt by him during his lifetime of such commissions would no doubt be income to him, see Helvering v. Eubank, 1940, 311 U.S. 122, 61 S. Ct. 149, 85 L.Ed. 81, but it can hardly be doubted that upon his death his right to receive such future income payments would have to be included as part of his gross estate.

We have spoken of a common type of arrangement whereby liquidation of the partnership is merely postponed, the deceased partner's estate sharing in the profits meanwhile. The payment to the estate of a share of the intervening profits could in no sense be described as the purchase price for the deceased partner's interest, for the value of that interest is ultimately to be paid over to the legal representative upon a final liquidation and accounting at the end of the partnership term.

In the case at bar the partnership agreement contains another familiar arrangement, whereby no liquidation and final accounting will ever be necessary in order to satisfy the claim of the deceased partner. In place of the chose in action to which Mr. Nutter's executor would have succeeded in the absence of specific provision in the partnership articles, that is, a right to receive payment in cash of the amount shown to be due the deceased partner upon a complete liquidation and accounting, a different right is substituted, a right of the estate to receive a share of the net profits of the firm for 18 calendar months after the partner's death.

The language of the partnership agreement in the present case is couched in terms of a purchase of the deceased partner's interest. What the estate is to receive "shall

---

[3] See the discussion by Mr. Justice Roberts in 295 U.S. 247, at page 256, 55 S. Ct. 695, at page 698, 79 L.Ed. 1421. At this point the opinion answers the argument of the Commissioner that the value of the right of the deceased partner to a share in future profits of the firm ought to be included in the gross estate, while the receipt by the executor of such future profits should be reported by the executor as income to the estate. The answer given is that the identical money received by the executor "not a right to receive the amount, on the one hand, and actual re-

ceipt resulting from that right on the other—was the basis of two assessments." See also Helvering v. Enright's Estate, 1941, 312 U.S. 636, 641, 61 S.Ct. 777, 780, 85 L.Ed. 1093, in footnote 9, where the court recognizes that the right of a deceased partner in a law firm to share in fees accruing to the partnership after his death, might in the year the share became distributable "then be income to the estate, even though the value of the right to receive it was included in the estate return."

be in full of the retiring or deceasing member's interest in the capital, the assets, the receivables, the possibilities and the good will of the Firm". There is to be an extinguishment of the decedent's interest in the totality of the firm assets, tangible and intangible, as they stood at the moment of death, and the interests therein of the surviving partners are to be correspondingly augmented. Decision in the estate tax case now before us does not turn on the question whether the effect of the partnership agreement may be characterized with entire accuracy as a "purchase" and "sale" of the deceased partner's interest in the partnership.

■ If the agreement had provided that at the expiration of 18 months after the death the deceased partner's estate shall receive $30,000 "in full of the deceased member's interest" no one could doubt that the commuted value of the right to receive this future payment of $30,000 would have to be included in valuing the decedent's gross estate. The nature of the transaction is not essentially changed if the sum to be paid is expressed in terms of a variable amount calculated by reference to a percentage of the net profits of the continuing business for a stated period. See our decisions in Hill v. Commissioner, 1 Cir., 1930, 38 F.2d 165, and in Pope v. Commissioner, 1 Cir., 1930, 39 F.2d 420, which cases were cited with approval in Bull v. United States, 1935, 295 U.S. 247, 254, 55 S.Ct. 695, 79 L.Ed. 1421. Whether the payment to the estate is expressed in terms of a percentage of the net profits of the continuing business as in Pope v. Commissioner, supra, or in terms of an amount equal to a percentage of the net profits for the stipulated period, as in Hill v. Commissioner, supra, is a matter of form, not of substance. In either case the purpose of the agreement is to enable the survivors to satisfy the claim of the deceased partner and to continue the business without liquidation. Under this type of arrangement there is a clear implication in Bull v. United States, 1935, 295 U.S. 247, at page 254, 55 S.Ct. 695, 79 L.Ed. 1421, that the substituted right to which the executor of the deceased partner succeeds must be included as a part of his gross estate.

■ In the present case the Commissioner valued Mr. Nutter's interest in the partnership at the sum of $34,069.99, which happened to be the exact amount received by the executors from the survivors as representing 8% of the net profits of the partnership for the 18 calendar months after the death. There is no contention that this was an overvaluation. As bearing on the value of the right to receive 8% of the net profits for such period, the Commissioner put in evidence past partnership earnings as follows:

| 1930 | ... | $311,215.09 | 1933 | ... | $343,810.80 |
| 1931 | ... | 345,549.12 | 1934 | ... | 366,881.59 |
| 1932 | ... | 235,016.21 | 1935 | ... | 405,492.26 |

The Board pointed out that at the optional valuation date, one year after death, the 8% amounted to $28,069.46 and the contract still had six months to run. The Board said: "Certainly at the end of one year the contract was worth, at least, the amount it had already produced." Judging from this, and from the past history of the partnership's earnings, the indication then was that the contract right was worth considerably more than $34,069.99. The Board therefore concluded that the Commissioner "did not err in adding to gross estate $34,-069.99". We agree.

In this case we do not have to consider any questions involving the income taxes payable by Mr. Nutter's estate or by his residuary legatee or by the surviving partners in respect of the profits made by the firm during the 18 months' period after Mr. Nutter's death. We intimate no opinion as to the many perplexing income tax problems lurking in the background. See Rabkin and Johnson, The Partnership under the Federal Tax Laws, 55 Harv.L.Rev. 909 (1942).

■ A separate but minor issue is raised in the petition for review. On the estate tax return the executors reported and included in the gross estate $2,073.75 interest and dividends accrued but not received on February 21, 1938, the optional valuation date. In redetermining the deficiency the Board held that this amount should not have been included, but that, on the other hand, the executors should have included $3,038.89 interest and dividends accrued but not received on February 21, 1937, the date of decedent's death. The facts relating to this issue are very inadequately reported; and we are unable to conclude, from the record before us, that the Board committed error in this respect.

The decision of the Board of Tax Appeals is affirmed.