Alice B. WINKLE, Executrix of the Estate of Ruth Chambers Benson, late of Patterson Heights, Beaver Falls, Pennsylvania, Plaintiff,

v.

The UNITED STATES OF AMERICA and A. J. Dudley, Director of Internal Revenue, Pittsburgh District, Defendants.

Civ. A. No. 15431.

United States District Court
W. D. Pennsylvania.
March 25, 1958.

John D. Ray, Beaver, Pa., for plaintiff.

D. Malcolm Anderson, Jr., U. S. Atty., Thomas J. Shannon, Asst. U. S. Atty., Pittsburgh, Pa., Charles K. Rice, Asst. Atty. Gen., James P. Garland, Arthur C. Flinders, Dept. of Justice, Washington, D. C., for defendants.

MARSH, District Judge.

This is an action brought under Title 28, § 1346(a) (1) of the United States Code to recover $5,700.47 of estate tax alleged to have been erroneously and illegally determined against the Estate of Ruth Chambers Benson, which tax has been duly paid under protest by the Estate.

Most of the facts were stipulated, are so found, and are incorporated herein by reference.[1]

The action was originally filed against both the United States of America and A. J. Dudley, former Director of Internal Revenue for the Pittsburgh District, but was dismissed against the latter by stipulation of the parties.[2]

The decedent died on October 2, 1951, at which time she was a member of a partnership known as "Benson's" which was formed November 1, 1945, for the operation of a going department store business in Beaver Falls, Pennsylvania.

The partnership agreement specifically provided that it would continue for a term of 10 years, and that it would not be dissolved upon the death of any partner. It also provided that in the event of the death of any partner, no part of his capital contribution to the partnership could be withdrawn during the uncompleted term of the partnership, during which time his capital contribution would remain liable to partnership creditors. The agreement further provided that following a partner's death, his estate would be entitled to his share of partnership income as though he had lived; however, his estate would acquire no managerial right other than the right to inspect the partnership books. The estate would not be liable for partnership debts in excess of the amount of the deceased partner's capital contribution at the time of death.

Upon the decedent's death, the plaintiff was duly qualified and appointed executrix of her estate. An estate tax return was timely filed showing the decedent's interest in the partnership at $96,-416.97 which amount consisted of the decedent's partnership capital account plus the fair market value of the decedent's fractional share of the real estate held by the partnership.

The Revenue Service initially determined that the value of the decedent's interest in the partnership as a going concern should include a valuation of $4,000 to cover the good-will of the partnership business. Good-will had not been included as an item in the valuation of the partnership interest returned by the estate. Accordingly, a deficiency was assessed

1. The Stipulation of Facts filed by the parties was not very comprehensive, but we have used admissions of the parties that appear in their briefs as admissions of the facts needed to close the hiatus in the Stipulation.

2. Stipulation, paragraph 1.

and the estate tax collected based on this determination.[3]

In the usual course of administration by the Internal Revenue Service, and within the period of limitation for deficiency assessments,[4] the agent's determination was reviewed, and the reviewers eliminated the good-will valuation, but increased the valuation of the decedent's partnership interest by adding thereto the value of the right of the estate to share in post-death partnership income for three years and ten months, the remainder of the partnership term.

The Internal Revenue Service determined the assessment value of the estate's right to share in post-death partnership income by taking the decedent's interest in average partnership earnings for the years 1946 to 1951. This average yearly income was figured by using an allowance for depreciation of the partnership building based on the book value of the building, rather than the fair market value of the building at the time of the decedent's death. The average yearly income was then multiplied by three years and ten months, the remainder of the partnership term. From that result there was deducted 10% as a discount for risks of the business, and the remainder of $45,338.30 was considered by the Internal Revenue Service as the fair assessment valuation of the Estate's right to post-death income and includable as such in the decedent's gross estate.

In determining the assessment valuation of the decedent's fractional interest in the partnership building, the Internal Revenue Service used the fair market value of the building at the time of decedent's death, $83,000, and from this amount it deducted the total depreciation for the three years and ten months which would accrue on the building before the termination date of the partnership. The Internal Revenue Service allowed this depreciation deduction because the Estate had "no present right to the building because of the partnership agreement".[5] The depreciation figure thus used was based on a 25-year life used in the partnership accounting and was calculated on the fair market value stated above. The ultimate valuation of the decedent's interest in the partnership building was $70,273 and this amount was included by the Internal Revenue Service in the decedent's gross estate.

Finally, the Internal Revenue Service allowed a further 4% per year on the valuation of the decedent's entire partnership interest as a "present value discount".[6]

There is no evidence before the court with regard to the payment of income taxes on the amounts paid out of partnership income after the decedent's death; however, plaintiff in her brief states that the Estate paid income tax on the share of post-death partnership income paid to it.

In support of her claim, the plaintiff asserts that (1) the right of the Estate to receive a share of post-death partnership income is not includable in the gross estate for estate tax purposes because the decedent's capital contribution remain fully liable for partnership debts; (2) that the right of the Estate to receive a share of post-death partnership income cannot be separately valued for estate tax purposes because an item for partnership good-will was previously included and the tax based on it was paid by the estate; and (3) in the alternative, if the value of the right to post-death partnership income is includable in the gross estate, the Internal Revenue Serv-

---

3. The Stipulation of Facts and pleadings filed by the parties do not contain a clear narrative of the facts concerning the first deficiency assessment and the subsequent review; however, since both parties in their briefs similarly treat the matters as described herein, we will accept their statements in their briefs as admissions of those facts.

4. The applicable period of limitation for such assessments is three years; 26 U.S.C. § 874 (I.R.C.1939); 26 U.S.C. § 6501 (present Code provision).

5. Defendant's brief, p. 17.

6. Stipulation, Exhibit "A", p. 3.

ice has erroneously computed the valuation of the partnership interest by using the market value of the building in determining the value of the decedent's fractional interest therein, while using the much lower book value of the building in computing the depreciation allowance deductible in figuring the post-death income to the partnership.

Concerning the plaintiff's first contention, it is asserted that because the capital contribution remains fully liable for partnership debts for the duration of the partnership term, it therefore had no value because there was no guarantee that the Estate would receive any income, and there was even the possibility that it would lose some of the decedent's capital contribution. The plaintiff principally relies on the cases of Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Guggenheim v. Helvering, 2 Cir., 1941, 117 F.2d 469; Darcy v. United States, 1936, 15 F.Supp. 251, 83 Ct.Cl. 483, and In re Borden's Estate, 1916, 95 Misc. 443, 159 N.Y.S. 346, in support of her position. As is often the case, the defendant likewise relies on the Bull and Guggenheim cases in support of its position; therefore, both cases, of necessity, need be closely analyzed and their facts closely related to the facts at hand.

We think the Bull case is inapposite to the facts of the case at bar and not determinative thereof. In the Bull case the decedent was a member of a personal service partnership which owned no tangible property, required no capital, and in which the partners made no investment. Unlike the present case, the partnership agreement there provided that upon the death of a partner, the survivors should continue the business for a period of time during which the deceased member's estate was to receive a percentage of the profits and be responsible for a percentage of the losses in the same manner as if he had lived. In addition, another salient difference between the Bull case and the case at hand is the fact that Bull's executors were given the option to veto the continuation provision

and withdraw the partnership interest within 30 days after the probate of his will, while here the decedent's personal representative has no choice in regard to the continuation of the decedent's capital account in the partnership business. For these reasons alone the Bull case is distinguishable from this case. Cf. In re Estate of Riegelman, 1957, 27 T.C. 833, 836. Moreover, in the Bull case the Commissioner of Internal Revenue failed to distinguish between income actually received after death and the value as of the time of death of the right to receive income in the future, thereby assessing an estate tax on the identical amount later received by the estate as its share of the post-death partnership income. Duffield v. United States, D.C. E.D.Pa.1955, 136 F.Supp. 944. However, the Internal Revenue Service here has allowed certain deductions, outlined above in computing the proper valuation of the post-death income right.

Finally, the Bull case as authority for the proposition that the right to post-death income is not includable in the gross estate for federal estate tax purposes has been questioned in the case of McClennen v. Commissioner of Internal Revenue, 1 Cir., 1942, 131 F.2d 165, at page 169, 144 A.L.R. 1127, where the court said:

> "Bull * * * was a peculiar case on its facts and in the way the case came up; but we do not understand this case to hold that a right to receive future income payments is not 'property' includable in the the gross estate."

In the Guggenheim case, supra, the partnership agreement provided that a deceased partner's interest must remain in the firm until the survivors chose to close out the last venture engaged in at death, and, moreover, unlike here, that the deceased partner's interest could be exposed to future risks with the right of the surviving partners to charge the decedent's personal representatives with decedent's share of the future expenses in that venture. Upon Guggenheim's death, the partnership had assets and

possible liabilities as guarantor of several outstanding loans. Based on its finding that there would be nothing due on the existing guarantees, the Board of Tax appeals valued the assets and found a deficiency based on the asset value undiminished by liabilities. The Court agreed with the Board of Tax Appeals insofar as the values of the assets and the guarantees were concerned, but remanded the case because the Board had not considered the possibility of a serious effect upon the value of the estate assets that might result from the provision that nothing could be withdrawn until the last undertakings were completed. Even though the final result concerning the value of Guggenheim's partnership was more speculative than here, we do not understand that decision to hold that the deceased's share of partnership assets including the right to post-death income, were not to be included in the gross estate for federal estate tax purposes because of the possibility of losses, but merely remanded the case so that the value of the right to future income could be properly ascertained. We do not consider Guggenheim as support of the theory advanced by plaintiff.

In the Darcy case, supra, also relied on by plaintiff, the Court followed the result of the Bull decision and held that post-death income is not includable in the gross estate for estate tax purposes; however, there the decedent was a member of a partnership engaged in the business of cotton and merchandise brokers, essentially a personal service organization. Also there was no evidence of any capital contribution on the part of the decedent to the partnership, all of which distinguish the case at bar.

In the Borden case, supra, the facts of which plaintiff asserts closely parallel the facts at hand, did not involve the Federal Estate tax, but rather the New York Transfer tax. The partnership agreement there likewise provided for the payment of post-death partnership income to the estate of a deceased partner; however, it also provided that the surviving partners could terminate the partnership at any time after the decedent's death, a very important fact which made the right so speculative that it had no practical value. Moreover, there the partnership agreement provided that the exclusive right to the partnership name, a very important part of the partnership good-will, passed to the surviving partners so that again the remaining right of the estate in the partnership business was quite worthless. For these reasons, the Borden case is likewise inapposite to the case at hand and does not control its result.

■ Plaintiff's argument is primarily based on the fact that decedent's capital contribution remained fully liable for partnership debts, which fact, as plaintiff contends, made the right to share in post-death income so speculative that for all practical purposes, it had no value. Again, we cannot agree with plaintiff's contention.

"It has long been recognized that a value can be placed upon rights even though there is some uncertainty as to the amount, if any, which will be received under the terms of the rights. See Simpson v. United States, 1920, 252 U.S. 547, 40 S.Ct. 367, 64 L.Ed. 709; Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647, where the court said that 'the general uncertainty that attends human affairs' is not such an uncertainty that prevents valuation of a right subject to such uncertainty." Duffield v. United States, supra, 136 F.Supp. at page 947, footnote 9.

Nor can we agree with plaintiff's further contention that the right to post-death income is not includable in the gross estate because the Government has already received income tax on it when the Estate returned it as income to it. The Bull case itself recognizes that the same sum may be used in different aspects for the computation of both estate tax and income tax (295 U.S. at page 256, 55 S.Ct. at page 698, 79 L.Ed. 1421). That this is so is confirmed by the fact

that the Internal Revenue Code of 1939 [7] provided that, in computing the income tax payable upon the receipt of income in respect of a decedent, a deduction shall be allowed for the estate tax attributable to the inclusion of the right to the income in the decedent's estate. Cf. United States v. Ellis, D.C.S.D.N.Y.1957, 154 F.Supp. 32, 39.

Finally, with regard to the issue of includability of the right to post-death income in the gross estate, we refer to the example hypothesized by the Court in McClennen v. Commissioner of Internal Revenue, supra, 131 F.2d at pages 168–169, which we consider strikingly similar to the facts of the case at hand:

"Sometimes the partnership agreement merely provides for the postponement of liquidation, say, to the end of the term for which the partnership was created. Thus, a partnership agreement between A, B and C might provide that 'should any partner die during the term of said co-partnership the firm shall not be dissolved thereupon, but the business shall be continued by the survivors until the expiration of said partnership term, the estate of the deceased partner to bear the same share in profits and losses as would have been received and borne by the deceased partner had he lived'. Under such an agreement, if A dies, B and C do not buy out A's interest in the partnership. Unless more appears, A's executor does not become personally liable as a general partner, [cites case]. Nor is A's general estate in the executor's hands liable as a partner for new debts created by B and C in continuing the business. [cites case] For the remainder of the term, A's share already embarked in the business remains in, subject to the risks of the business. It would seem not improper to describe the continuing business as now being owned by B and C as general partners, with A's estate (or A's executor as trustee under the will of A) as a limited partner therein, sharing in the profits, but not liable beyond the amount or interest already embarked in the business.

"In the case just supposed, the chose in action, the right to which A's executor succeeds, would have to be included as part of the gross estate for estate tax purposes. It is a right to a fixed share of the profits of the business during the continuance of the term, plus a right to receive in cash the amount due to A's estate upon a final liquidation and accounting after the expiration of the term. *This right in its entirety is an asset of A at the date of his death; and the value of this right as of the date of the death or the optional date one year later, with due discount for postponement of payment and other contingencies, would be included in computing the value of the gross estate.*" (Emphasis supplied.)

Therefore, we are constrained to hold that the right of the estate here to a share of the post-death income of the partnership is a right properly includable in the gross estate of the decedent for estate tax purposes. Cf. Degener v. Anderson, 2 Cir., 1953, 77 F.2d 859.

The plaintiff's second contention that the Internal Revenue Service's revaluation of the decedent's partnership interest to include a valuation for the right to post-death income was improper and unlawful because the Internal Revenue Service had previously made a deficiency assessment based on the good-will of the partnership business is also without merit.

Plaintiff overlooks the significance of the fact that in making the deficiency assessment based on the value of the right to post-death income, the Internal Revenue Service eliminated the prior good-will item and gave the plaintiff credit for the estate tax already paid thereon.[8]

[7]. 26 U.S.C.A. § 126.

[8]. Stipulation, Exhibit "A", page 4.

There was no duplication of valuation which required the payment of a double estate tax on the same asset. There were no representations or other facts in evidence which would raise and support any theory whereby the Internal Revenue Service is estopped from making the revaluation and deficiency assessment.

Moreover, there was no closing agreement or compromise which would preclude the Internal Revenue Service from making a recomputation of the Estate's tax liability within the period of limitation. Cf. Okonite Co. v. Commissioner of Internal Revenue, 3 Cir., 1946, 155 F.2d 248, certiorari denied 329 U.S. 764, 67 S.Ct. 125, 91 L.Ed. 658, rehearing denied 329 U.S. 829, 67 S.Ct. 296, 91 L.Ed. 703, rehearing denied 331 U.S. 870, 67 S.Ct. 1748, 91 L.Ed. 1872; Knapp-Monarch Co. v. Commissioner of Internal Revenue, 8 Cir., 1944, 139 F.2d 863; Auerbach Shoe Co. v. Commissioner of Internal Revenue, 1 Cir., 1954, 216 F.2d 693.

■ We do find merit in the plaintiff's third contention. We think the Internal Revenue Service should have used the fair market value of the building at the time of the decedent's death in figuring the depreciation allowance of the partnership building to be used in determining the value of the right to post-death income.[9] The defendant admits that the use of the lower depreciation allowance for the building based on its book value did result in a higher valuation of the Estate's right to post-death income,[10] but contends that the higher valuation was offset by the Internal Revenue Service's giving the Estate the benefit of a depreciation deduction in arriving at the valuation of the decedent's fractional interest in the building. As stated earlier in this opinion, the Internal Revenue Service allowed the depreciation deduction on the building for the period of the uncompleted term of the partnership because there was no present right to the building on account of the partnership agreement. The defendant would now seem to assert that the depreciation allowance should not have been granted.

■ The depreciation allowance granted actually amounts to a 15⅓% discount on the fair market value of the decedent's interest in the building at the time of death. In view of the fact that the decedent's interest in the building was a mere fractional interest, and since the enjoyment of such interest because of the partnership agreement was postponed to the date of dissolution of the partnership agreement, we do not consider such a discount, whether in the form of a depreciation allowance or otherwise, improper. Cf. Estate of Campanari, 1945, 5 T.C. 488, and Wm. R. Stewart, Executors, 1934, 31 B.T.A. 201, where, in valuating fractional interests in realty for estate tax purposes, discounts of 12½% and 15%, respectively, were allowed from the fair market proportionate value of the whole.

The Estate's right to post-death income should be revaluated by using a depreciation allowance for the partnership building based on its fair market value less the discount of 15⅓%, or $70,273.00, over a 25-year life, and that any overpayment of estate tax revealed by such computation should be refunded to the plaintiff with interest at the rate of 6% per annum from the date of payment, September 8, 1955.[11]

9. Logically the basis of the partnership building used for the purpose of valuing the right to post-death income should be the same basis used in valuating the decedent's interest in the building. See § 811 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811.

10. Defendant's brief, p. 17.

11. See Stipulation, paragraph 7, with regard to date of payment.