Abraham MANDEL, Executor of the Will of Max Mandel, Deceased, Plaintiff-Appellant,

v.

Walter R. STURR, Collector of Internal Revenue for the 14th District of New York, et al., Defendants-Appellees.

Pauline HOFFMAN, Lillian Starr, Joseph J. Mandel and Abraham Mandel, Plaintiffs-Appellants,

v.

David COPANS, Executor of Harry M. Hickey, deceased, former Collector of Internal Revenue for the 14th District of New York, et al., Defendants-Appellees.

Nos. 59 & 60, Dockets 24993, 24994.

United States Court of Appeals Second Circuit.

Argued Jan. 7, 1959.

Decided April 29, 1959.

James R. Rowen, New York City (Abraham Mandel, New York City, on the brief), for plaintiffs-appellants.

Arthur V. Savage, Asst. U. S. Atty., Southern District of New York, New York City (Arthur H. Christy, U. S. Atty., Southern District of New York, New York City, on the brief), for defendants-appellees.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and GIBSON, District Judge.

GIBSON, District Judge.

Abraham Mandel, executor under the will of Max Mandel, and the beneficiaries, Pauline Hoffman, Lillian Starr, Joseph J. Mandel, Abraham Mandel, hereinafter referred to as the beneficiaries, brought their actions to recover amounts paid by them under protest as a result of additionally assessed estate and income taxes. The executor and the beneficiaries, respectively appeal from the determinations of the Trial Court sustaining in part the deficiency assessed by the Commissioner of Internal Revenue in the estate tax reported by the executor and the income taxes of the recipient-beneficiaries. The appeals in the two cases have been consolidated.

The essential facts of this case are fairly clear. At the date of Max Mandel's death on June 9, 1945, he and David Wolfson were sole partners in a military uniform business. It is apparent from the facts that the partnership owned and required substantial capital to function. Under the terms of an agreement entered into between the surviving partner and the executor, on December 31, 1945, the book value of Max Mandel's share in the tangible assets of the partnership was fixed at $153,162.56. There is no reason to doubt that this was a fair valuation. In fact, that figure is not questioned either in the court below or before this court. That amount was included in the decedent's gross estate and the estate tax properly paid. The sole issues here are (1) whether the gross estate of the decedent includes an amount ($12,595.57)

received pursuant to a partnership agreement representing interest on the capital account (valued at $153,162.56), and (2) whether it includes an amount ($10,000) received by the estate in settlement of a claim to participate in the profits of the business as carried on by the surviving partner (Wolfson) subsequent to the death of Max Mandel. Are these amounts "income in respect of a decedent" to the beneficiaries within the meaning of Section 126, Internal Revenue Code of 1939, 26 U.S.C.A. § 126?

■ The partnership agreement in effect at Max Mandel's death provided in part as follows:

"13. That at the expiration of this partnership by the expiration of its term or by reason of any other cause, a full and accurate inventory shall be prepared, and the assets, liabilities and income, both gross and net, shall be ascertained; the debts of the partnership shall be discharged; and all monies and other assets of the partnership then remaining shall be divided in specie between the parties share and share alike, provided, however, that the capital accounts are equal, and if not equal, in that event in such proportion as the capital accounts bear to each other."

"18. That in the event of the death of either party hereto, this partnership shall terminate and the surviving partner shall become trustee of all of the assets and business of the partnership for the purpose of liquidating the same, discharging its debts and paying to the representatives of the deceased party the respective share as hereinabove provided of said deceased party. The said surviving party shall pay to the representatives of the deceased party the sum of $5,000. in cash immediately upon receipt from the insurance company of the proceeds of the policy referred to hereinabove in Paragraph 16 and the balance of the deceased par-

ty's share in the partnership in 40 equal monthly installments with interest at the rate of 6% per annum to be computed from the date of demise * * * "

There are other provisions in the agreement whereby a retiring partner could similarly receive installment payments of his partnership share upon retirement. There is little or no doubt that the value of an estate's right to receive income earned by a partnership subsequent to the death of a deceased partner is includible in the gross estate. As this court stated in Riegelman's Estate v. Commissioner, 2 Cir., 1958, 253 F.2d 315, 316, an extended discussion is not required as to that particular point, it having been adequately reviewed and analyzed elsewhere. However, this case is distinguishable from Riegelman on the facts.

The amount of $22,595.57, the subject of this appeal, derives from two sources. Firstly, under the quoted portions of the partnership agreement, the deceased partner's share in the partnership assets was payable to the estate in 40 equal monthly payments with interest at 6% per annum. There was, however, a lapse of some six months from the date of Max Mandel's death without any such payments being made. It is apparent that after negotiation between the executor and the surviving partner, David Wolfson, a Memorandum Agreement was entered into which provided that the deceased partner's share of the partnership assets, valued at $153,162.56, would be paid to the estate in full. Wolfson then paid that amount as agreed. They further agreed that the amount of $12,595.57 was to be paid to the estate in full settlement of all interest due or to become due on the capital account under the Mandel-Wolfson partnership agreement and that an additional $10,000 would be paid by Wolfson in settlement of any claim the estate and beneficiaries might have to post-mortem profits in the partnership. There is no evidence that these were other than arm's-length negotiations, or that the interest provisions

of the partnership agreement were calculated as a method of substituting interest payments for capital to escape possible estate taxation.

The sum of $22,595.57, representing the total of $12,595.57 in interest and $10,000 in settlement of the claim to future profits was paid by Wolfson and distributed to the beneficiaries. The executor and recipient-beneficiaries brought their actions to recover taxes paid on these amounts under protest.

■ Although Section 126 of the Internal Revenue Code of 1939 is high on the list of vaguely drafted legislation in a field notoriously complex, we see no reason to extend its broad language so far as the Government urges in this case. The $12,595.57 was paid by Wolfson in settlement of interest due on an asset of the estate. It was a fair amount to pay for the full usage had by Wolfson of the capital of the estate invested in his business over the period of time until the full share of the decedent's interest in the partnership assets was paid in full to the estate. As such, the $12,595.57 is in the nature of a legal rate of interest or return on a capital investment significantly represented by the principal amount of $153,162.57, already included in the gross estate and the estate tax once paid. To perpetually tax the right to interest or earning capacity of the capital already included in the gross estate, as the appellee suggests, extends the meaning of the Code beyond reason. The Government places much reliance on the Riegelman case, supra, wherein this court reviewed much of the legislative and case history of Section 126, Internal Revenue Code of 1939. That case has, however, no factual similarity to the case before us. In the case before us, capital is a substantial income producing factor, whereas in Riegelman, it is not. The interest payment can hardly be said to be "the fruits of the (deceased's) professional activity during his lifetime." The $12,595.57 has once been accounted for, in effect, by the inclusion of the $153,162.56 in the decedent's gross estate and is an inherent

part of that amount. Such a conclusion is in accord with the court's reasoning in McClennen v. Commissioner of Internal Revenue, 1 Cir., 131 F.2d 165, 169, 144 A.L.R. 1127. There Judge Magruder aptly analogizes to the case of one who dies possessed of a $1,000 bond payable in ten years bearing interest at 6%. Judge Magruder points out that the bond in its entirety, valued at par at the date of death, will be included in the gross estate, and upon the decedent's death the right to future income payments have been in effect included in that amount in his gross estate. In short, the interest payment in the case before us is not separately attributable "to the activities of the decedent during his lifetime," but is attributable to the earning capacity of the capital of the estate allowed to remain in Wolfson's business. It has been in effect accounted for by the inclusion of $153,162.56, the deceased's share in the partnership, in the gross estate. In the absence of any evidence of subterfuge on the part of the partners, Mandel and Wolfson, whereby the value of their respective partnership share was understated and subsequently paid out to the estate in the guise of interest payments, we hold that the interest payment of $12,595.57 is not a proper item for inclusion in the decedent's gross estate, nor is it to the recipient-beneficiaries "income in respect of a decedent." It is, however, as the appellants admit, ordinary income accruing to the estate and beneficiaries.

The $10,000 item which the Government contends is squarely within the rationale of the Riegelman and McClennen cases poses another question. If this payment represents a settlement of the estate's established right to post-mortem partnership earnings, and such right was created prior to the decedent's death as a substitute for the estate's common law liquidation share, then it is a sum includible in the gross estate. However, to characterize the $10,000 payment as a settlement of an existing right of the estate at the date of the decedent's death is inaccurate. The sit-

uation as to the $10,000 Wolfson paid the executor and beneficiaries to settle their claim for post-mortem profits is quite different. Had Wolfson promptly carried out the terms of the partnership agreement, the executor and beneficiaries would have had no right to claim any share in post-mortem profits. Neither the decedent nor his executor or beneficiaries could anticipate that Wolfson would not promptly proceed to carry out the applicable provisions of the partnership agreement.

When the executor concluded that Wolfson had unduly delayed carrying out the terms of the partnership agreement he entered a claim for post-mortem profits accruing during this claimed undue delay.

In McClennen and in Riegelman the courts had before them partnership agreements obviously providing for a right of the estate to share in post-mortem profits in lieu of common law liquidation rights to which the estate would have succeeded in the absence of those agreements. There is no such provision in the Wolfson-Mandel partnership agreement. As stated in Riegelman [253 F.2d 319]: "the payments were not gifts, nor were they attributable to anything done by Riegelman's estate." On the other hand, in the case before us, the $10,000 was a purchase of peace by Wolfson, in effect attributable to the activity of the executor and beneficiaries.

■ When Max Mandel died on June 9, 1945, the estate was properly entitled to a settlement of its share in the Mandel-Wolfson partnership interest pursuant to the partnership agreement. While the decedent's estate was entitled to monthly payments with interest in the manner provided in sections 13 and 18 of that agreement, there is no provision for post-mortem partnership profit payments such as we find in Riegelman. It was only after a lapse of six months or so, during which time no monthly payments were forthcoming that the executor felt entitled to a certain percentage of partnership profits to compensate them for Wolfson's undue delay in paying over its share in the partnership assets. The estate's share in the partnership's tangible assets was a benefit to Wolfson's business so long as it was retained by him after the death of the decedent, Max Mandel. From these facts the estate's claim to partnership profits arises. In settlement of this claim, the executor, Wolfson, and the beneficiaries entered into a Memorandum Agreement whereby it was agreed that Wolfson would pay $10,000 in full settlement of any claim the executor and the beneficiaries might have to post-mortem profits in Wolfson's business. This payment is referred to in the Memorandum Agreement as being "in full *settlement of the claim* of (the executor and the beneficiaries) to participate in the profits of (the business) * * * ". This Memorandum Agreement established a new right that did not exist at the time of the decedent's death—a sum paid in satisfaction of the contentions of all parties thereto. $10,000 paid under these circumstances does not conclusively establish an existent right of the estate to participate in post-mortem profits when we come to the issue of estate and income taxes. There may well have been no validity to the estate's contentions as to profits prior to the Memorandum Agreement. However, an agreement to pay and accept $10,000 in settlement of the dispute is entirely reasonable and beneficial to Wolfson's business and to the estate, both desiring to clear up the affairs expeditiously with a minimum of litigation and expense. On the facts of this case, the payment by way of settlement (attributable to the activity of the estate) is not includible in the estate of the decedent under Section 811 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811, nor is it "income in respect of a decedent" under Section 126 any more than it would be if it were a gift from Wolfson to the estate and beneficiaries. See Bausch's Estate v. Commissioner, 2 Cir.,

186 F.2d 313. The $10,000 is ordinary income accruing to the estate and beneficiaries.

Lastly, the question of attorney's fees is raised by appellants. The Trial Court found the sum of $2,500 to be a reasonable amount for prosecuting the refund claim, and disallowed the $5,000 figure claimed. In computing the estate tax, the estate was allowed a $2,500 deduction. We are unwilling to reverse without concluding that the Trial Court's findings were clearly erroneous. International Bureau v. Bethlehem Steel Company, 2 Cir., 192 F.2d 304. There is no basis for the appellant's contention that the Trial Court abused its discretion.

It is apparent, however, that the $2,500 allowed did not include this appeal. The Trial Court is in a far better position than is this court to determine whatever should be allowed for these services.

Accordingly, we remand to the Trial Court, as we have done in the past, for a determination of the amount that should be allowed for this appeal. Bassett's Estate v. Commissioner of Internal Revenue, 2 Cir., 170 F.2d 916.

Reversed in part; remanded for further proceedings consistent with the views expressed herein.

CLARK, Chief Judge (dissenting in part).

I concur in the opinion and decision so far as it concerns the item of $12,-595.57 received in settlement of the claim for interest and discusses the award of counsel fees. But I cannot agree with the court's exclusion from the gross estate of the $10,000 item here in dispute. The agreement negotiated at arm's length between appellants and Wolfson unambiguously characterizes this sum as a settlement of appellants' claimed right to post-mortem profits under the partnership agreement, and con-

tains no hint of some claim independent of that agreement to compensate for Wolfson's delay in paying the other sums due them.[1] This evidence alone is sufficient to support the trial judge's finding in favor of the Commissioner and fix the character of the claim settled; indeed, there is no substantial evidence to the contrary.

Moreover, since appellants have in fact received $10,000 on their claim, I do not think it necessary for tax purposes to make our own assessment of its validity. Surely a wage earner who shows that he sleeps on his job cannot successfully contend that sums received from his employer are nontaxable "gifts," rather than earnings. Appellants clearly accepted the $10,000 as a performance by Wolfson of his obligations under the partnership agreement. It is this performance which should be taxed, and not some other or different performance which might have been required by the agreement while it was still partly executory.

---

1. The agreement states that "a dispute has arisen as to the construction of the aforesaid partnership agreement with respect to * * * (2) the right of the Estate of Max Mandel to participate in the profits and other accruals of" the partnership after Max Mandel's death.