Florence A. **DUFFIELD**, Executrix of the
Estate of H. Alan Dawson,
Deceased

v.

**UNITED STATES** of America.
Civ. A. No. 18646.

United States District Court
E. D. Pennsylvania.

Dec. 21, 1955.

Edward J. Mingey, Philadelphia, Pa.,
for plaintiff.

W. Wilson White, Philadelphia, Pa.,
for defendant.

VAN DUSEN, District Judge.

This suit for refund of federal estate
taxes is now before the court on plain-
tiff's motion for summary judgment un-
der Fed.Rules Civ.Proc. rule 56, 28 U.S.
C.A.

In 1930, Henrietta Garrett died intestate, leaving an estate of several million dollars. During the next several years, many thousands of persons laid claim to this fortune as the heirs and next-of-kin of Mrs. Garrett. In 1932, H. Alan Dawson, the decedent herein, entered into fee contracts with three persons who were among the many claimants. The contracts provided that Dawson was to prosecute the claims of these three and, if he proved successful, he was to receive a certain percentage of any recovery effected. The Orphans' Court of Philadelphia County appointed a Master and examiners to inquire and to hear testimony in order to ascertain the distributees of Mrs. Garrett's estate. Thousands of claims were prosecuted, including those of Dawson's clients. In 1949 Dawson died; the following year the Master's report in the Garrett estate was filed in which the Master concluded that the three parties represented by Dawson were Mrs. Garrett's nearest next-of-kin and recommended distribution of the estate to them. The auditing judge of the Orphans' Court adopted the conclusions of the Master and his position was affirmed by the Supreme Court of Pennsylvania in 1952. Petitions for certiorari were taken and filed in the Supreme Court of the United States and the last of these was dismissed in 1953, at which point the rights of Dawson's clients were finally fixed. Upon this final adjudication, Dawson's estate received approximately $800,000 under the fee contracts. Shortly thereafter, plaintiff filed an estate tax return in which Dawson's property was valued as of the date of his death and in which the contingent fee contracts were returned as having "no value." [1] The Commissioner examined the return, valued the contracts as being equal to the fees received under them, and assessed additional estate taxes. Plaintiff challenged the validity of this assessment but, nevertheless, chose to pay the additional tax and sue here for refund.[2]

Plaintiff's contentions in this motion for summary judgment are three-fold. First, plaintiff argues that, as a matter of law, these fee contracts were not includible in the gross estate. Second, he argues that even if they are includible, the contracts were incapable of valuation as a matter of law. Finally, plaintiff asserts that even if includible in the gross estate, these contracts were valueless as a matter of fact.

I. Argument that the fee contracts are not includible in the gross estate as a matter of law.

■ Plaintiff bases this argument primarily on the case of Bull v. United States.[3] In that case, decedent, at the time of his death, was a member of a partnership whose articles of association provided that on the death of any partner his estate was entitled to share in the profits of the firm for a period of one year next following.

Plaintiff here asserts that the court held as a matter of law that this right to share in future contingent profits could not be subjected to federal estate tax.[4] From this, the plaintiff reasons

1. "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—
"(a) To the extent of the interest therein of the decedent at the time of his death; * * *." 26 U.S.C.A. § 811 (1939 Code).

2. This statement of facts is adapted from plaintiff's brief and, for the purposes of this motion, is considered accurate.

3. 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L. Ed. 1421.

4. Bull's executor filed an estate tax return in which no value was assigned to this right under the articles. After the estate had received the money due under this provision, the Commissioner examined the return and levied an estate tax on the sums received. A deficiency was assessed which the estate paid. Four years later, the Commissioner determined that the sums received by the estate under the articles represented income and were, therefore, subject to income tax; how-

that in his case the rights of Dawson under the Garrett estate fee contracts were not includible in the gross estate. However, a careful reading of the Bull case clearly indicates that the imposition of the estate tax was struck down by the Supreme Court because the Commissioner failed to distinguish between income actually received after death and the value as of the time of death of the right to receive income in the future. In so doing, he levied an estate tax on the former before it was actually received and thus was not part of decedent's estate at his death.[5] The Supreme Court held such a levy improper.[6] In the case before this court, however, the Commissioner assessed the estate tax on the value at Dawson's death of his right to compensation under the fee contracts, not on the fees themselves.[7] Thus, plaintiff's contention that

ever, even though the Commissioner had levied an estate tax on these very sums, he refused to allow a credit of any part of the estate taxes previously paid to be applied against the income taxes allegedly due. The estate paid the income tax and sued alternatively for either (1) refund of all the income tax paid or (2) refund of that portion of the income tax which equalled the amount of the estate tax since a credit should have been allowed for this illegally claimed estate tax. These claims for relief were met by the Government's contentions that, first, the income tax was properly assessed and, second, even if the estate tax was improper, the statute of limitations had run on the executor's claim for refund of this tax. Faced with the situation in which the Commissioner was attempting to capitalize on his own error by raising the defense of the statute of limitations, the Supreme Court applied the doctrine of equitable recoupment and held that the taxpayer was entitled to a refund in the amount of the estate taxes paid, which should have been credited against the subsequently claimed income tax. In arriving at this decision, the court held that the estate tax was improperly assessed.

5. The Government's brief in the Bull case makes clear that that is what the Commissioner did.

"In filing an estate tax return, the decedent's executor included the decedent's interest in the partnership at a value of $24,124.20, which represented the decedent's share of the earnings accrued to the date of the decedent's death (R. 85). The Commissioner valued such interest at $235,202.99, arrived at by increasing the value by $212,718.79, the total thus representing the full amount received by the estate from the surviving partners (R. 85). The estate tax on this increased amount was $41,517.45 (R. 85)."

(P. 4 of Government's brief) See also brief for Petitioner in Bull, pp. 23–4.

The court used this language in its opinion (295 U.S. at page 256, 55 S.Ct. at page 698):

"While, as we have said, the same sum may in different aspects be used for the computation of both an income and an estate tax, this fact will not here serve to justify the Commissioner's rulings. They were inconsistent. The identical money—not a right to receive the amount, on the one hand, and actual receipt resulting from that right on the other—was the basis of two assessments. The double taxation involved in this inconsistent treatment of that sum of money is made clear by the lower court's finding we have quoted. The Commissioner assessed estate tax on the total obtained by adding $24,124.20, the decedent's share of profits earned prior to his death, and $212,718.79, the estate's share of profits earned thereafter. He treated the two items as of like quality, considered them both as capital or corpus; and viewed neither as the measure of value of a right passing from the decedent at death. No other conclusion may be drawn from the finding of the Court of Claims."

It also should be noted that the Bull estate had the option to take its share of profits or losses as of thirty days after death instead of its share of profits for the year after death (see 295 U.S. at page 251, 55 S.Ct. at page 696), making it even more difficult to value the right to possible partnership profits as of the date of death.

6. The Bull case has been so interpreted. McClennen v. Commissioner, 1 Cir.,1942, 131 F.2d 165, 144 A.L.R. 1127; Edmonds v. Commissioner, 9 Cir., 1937, 90 F.2d 14; Gump v. Commissioner, 9 Cir., 1941, 124 F.2d 540.

7. Plaintiff concedes this point at page 5 of his brief.

no value resulting from the fee contracts is includible in the gross estate as a matter of law cannot be maintained.

## II. Argument that these fee contracts are incapable of valuation as a matter of law.

■■ Plaintiff contends that the valuation of these fee contracts at the time of Dawson's death was a matter of such great speculation and conjecture that the Commissioner was, as a matter of law, precluded from placing a worth on them. Plaintiff's argument is this: At the time of Dawson's death, the Master's report had not yet been filed, and an adverse report could have issued. Also, even a favorable Master's report could have been overturned either by the Orphans' Court or by any of the appellate courts to which appeals were eventually taken. Plaintiff argues that these factors made valuation as of the date of Dawson's death a matter of mere guesswork.[8] There is nothing in the record, however, to indicate the possibilities, at the time of Dawson's death, of occurrence of any of the events suggested by plaintiff.[9] Perhaps the best answer to this contention is the uncontradicted affidavit filed by defendant on December 16, 1955, stating that these contingent fee contracts had substantial value, as explained more fully below.

## III. Argument that these fee contracts are valueless as a matter of fact and, thus, summary judgment is proper.

■ Plaintiff argues that these fee contracts are valueless as a matter of fact, thus making summary judgment proper, and has submitted affidavits in support of this contention.[10] However, defendant has filed an affidavit on December 16, 1955, which states that the contracts had substantial value at the date of Dawson's death.[11] This affidavit

8. Plaintiff relies on Olson v. United States, 1934, 292 U.S. 246, 257, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Safety Car Heating & Lighting Co., 1936, 297 U.S. 88, 97, 56 S.Ct. 353, 80 L.Ed. 500. These cases are significantly different on their facts from this case and the language used in them is subject to the following comment, which has been Federal court policy for more than 130 years:

"It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." Cohens v. Commonwealth of Virginia, 1821, 6 Wheat. 264, 399, 5 L. Ed. 257.

9. It has long been recognized that a value can be placed upon rights even though there is some uncertainty as to the amount, if any, which will be received under the terms of the rights. See Simpson v. United States, 1920, 252 U.S. 547, 40 S.Ct. 367, 64 L.Ed. 709; Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647, where the court said that "the general uncertainty that attends human affairs" is not such an uncertainty that prevents valuation of a right subject to such uncertainty.

10. Under the strict summary judgment rule prevailing in this Circuit, such judgment cannot be granted no matter how overpowering are plaintiff's affidavits if a factual issue is raised on the pleadings. See Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F. 2d 580; Reynolds Metals Co. v. Metals Disintegrating Co., 3 Cir., 1949, 176 F. 2d 90; Levy v. Equitable Life Assurance Soc., D.C.E.D.Pa.1955, 18 F.R.D. 164, opinion by Grim, J. It is believed that a factual issue is raised by the pleadings in this case, irrespective of the affidavits.

11. The court agrees with counsel for plaintiff's contention that the value of any rights attached to these contingent fee contracts must be determined as of the time of decedent's death and defendant's contention in the answer that these contracts were worth the full amount ultimately received would seem most un-

shows that a potential purchaser of contingent interests in the estate of Henrietta E. Garrett, deceased, who had investigated the relative merits of the various claimants to the estate in 1949, concluded that it had become "substantially certain" by August 1949 that the three persons represented by H. Alan Dawson would receive all or part of the above-mentioned estate. The affidavit further states that "at the time of the death of H. Alan Dawson on August 26, 1949, his contingent fee contracts above described had substantial value and your deponent would have at that time been willing to purchase the same at a mutually satisfactory price." In view of this affidavit, a factual issue is raised by the affidavits and summary judgment cannot be granted.

likely. See Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; Bank of California, National Ass'n v. Commissioner, 9 Cir., 1943, 133 F.2d 428; Commissioner of Internal Revenue v. Marshall, 2 Cir., 1942, 125 F.2d 943, 141 A.L.R. 445. However, Estate of Joe Crail v. Commissioner, B.T.A. Docket 106197, 47 B.T.A. 1042, C.C.H.Dec. No. 12,579–E (1942), relied on by plaintiff, does not hold that no contingent fee contract may ever have value prior to the final determination of the contingency. The findings of fact in that case make clear that in the only case, where there was any value in the rights under the contingent fee contract at the time of death, this value was included in the gross estate. See Finding of Fact No. 2 and paragraph 2 of the Opinion. Helvering v. Safe Deposit & Trust Co., 1942, 316 U.S. 56, 65, 62 S. Ct. 925, 86 L.Ed. 1266, 139 A.L.R. 1513, holds that events occurring after death which are controlled by the beneficiaries who will be affected by the tax may be considered in determining value for estate tax purposes. That is not the situation in this case.