UNITED STATES of America,
Appellant,

v.

Gordon SIMMONS and I. V. Simmons,
Executors of the Estate of B. Hill
Simmons, Appellees.

No. 21464.

United States Court of Appeals
Fifth Circuit.

May 27, 1965.

James F. Flug, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Donald H. Frazer, U. S. Atty., Savannah, Ga., Richard M. Roberts, Acting Asst. Atty. Gen., David O. Walter, Michael I. Smith, Attys., Dept. of Justice, Washington, D. C., for appellant.

Louis A. Thompson, Savannah, Ga., for appellees.

Before WISDOM and GEWIN, Circuit Judges, and BREWSTER, District Judge.

WISDOM, Circuit Judge:

This taxpayer's suit for an estate tax refund grew out of executors' settling for $42,000 an estate's claim for an income tax refund of $60,000, listed in the estate tax return as having "no value" at the date of the decedent's death.

The decedent, B. Hill Simmons, died December 27, 1955. Some time before his death, the Internal Revenue Service began investigating, on a net worth basis, Simmons's income tax returns for the years 1941 through 1953. As a result of the investigation, the decedent paid a deficiency in the amount of $43,000. The decedent never entertained the idea of filing a claim for a refund of these taxes. Shortly after Simmons's death, the executors of the estate employed an attorney, Mr. Louis B. Thompson, counsel for appellee, to investigate the decedent's tax affairs. By November 1956 the attorney decided that a claim for a refund should be filed for the decedent's taxable years 1941 through 1953. February 1, 1957, Mr. Thompson filed the claim for refund amounting to $60,000. Upon the Service's disallowing the claim, Mr. Thompson filed suit on behalf of the estate. In 1960, the Department of Justice approved the executors' offer of compromise for $41,187. Meanwhile, the taxpayer's attorney had filed an estate tax return list-

ing the income tax claim as having no value, but had requested that the estate tax liability be held in abeyance pending the outcome of the claim. The Commissioner determined that the claim was includible in the decedent's estate and valued the claim at the amount of the settlement.

■ Under Section 2031 of the Internal Revenue Code of 1954, the federal estate tax includes "all property, real or personal, tangible or intangible" of the decedent. When Simmons died, his "property" included the claim for refund of federal income taxes. Both parties agree that the claim for refund of income taxes is a part of Simmons's gross estate. But as far as it is possible to disagree as to value, they disagree: the United States contends that the amount of the compromise, $42,000, fixed the estate tax value of the claim; the Estate of B. Hill Simmons (the taxpayer) contends the claim had *no* value when Simmons died. The taxpayers asserts that at the time of death the executors thought the claim was worthless and would have sold it for $1,000. Allegedly, a key factor in filing the claim was the discovery in October 1956 of a pencil memorandum tending to disprove fraud in that it showed the decedent's intention to report certain cotton sales that had not been reported. The executors paid the tax assessed against the estate and sued for a refund.

The district court submitted the issue of valuation to the jury. The jury found that the claim was valueless at the time of the decedent's death. The district court denied the Government's motions for a directed verdict, a judgment n. o. v., and a new trial. We hold that the trial court correctly denied the motions for a directed verdict and judgment n. o. v., but we reverse the judgment and remand the case for a new trial, because there was no rational basis for the jury's finding that the claim for an income tax refund was valueless on the date of the decedent's death.

### I.

■ Since a motion for a judgment notwithstanding the verdict in effect renews an earlier motion for a directed verdict, the applicable judicial standard is the same for both motions. Fed.R. Civ.P. 50. Professor Wright comments on these two motions and on the motion for a new trial as follows:

"The motion for judgment n. o. v., like the motion for directed verdict, raises only the legal question whether there was enough evidence to make an issue for the jury. It differs from the motion for a new trial, where the court has a discretion to set aside a verdict and grant a new trial even if the verdict is supported by substantial evidence. The motion for judgment n. o. v., on the other hand, must be denied if there is any substantial evidence which would support a verdict. The credibility of witnesses and weight of the evidence, proper considerations on a motion for a new trial, are not the concern of the court on a motion for a directed verdict or for judgment n. o. v. The evidence must be viewed in the light most favorable to the party against whom the motion is made, he must be given the benefit of all legitimate inferences which may be drawn in his favor from that evidence, and the motion must be denied if, so viewed, reasonable men might differ as to the conclusions of fact to be drawn." Wright, Federal Courts § 95 at 370.

See also 2B Barron & Holtzoff (Wright ed.) § 1075. Professor Moore writes: "In ruling on the motion for directed verdict or for judgment n. o. v. it is the duty of the trial court to take that view of the evidence most favorable to the party against whom the motion is made, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for him." 6 Moore, Federal Practice, § 59.08(5) at 3814.

■ Bearing these principles in mind, we hold that a review of the record shows abundant evidence to make an issue for the jury as to the value of the claim. The Commissioner contends, however, that the trial judge should have directed the verdict in favor of the United States or granted a judgment n. o. v. because, as a matter of law, the amount of the compromise fixed the value of the claim for estate tax purposes.

The few decided cases in this area of tax law reject the Commissioner's contention. At one time the Board of Tax Appeals took the position that the amount later recovered on an income tax refund claim fixed the value of the claim for estate tax purposes. Security-First National Bank of Los Angeles, Executor of Estate of Milton Sills v. Commissioner, 1937, 35 B.T.A. 815; Estate of Harriet E. Barneson, 1941, P–H B.T.A. Memorandum Decisions ¶ 41,283. On appeal the Ninth Circuit reversed Barneson, sub nom., Bank of California, National Ass'n v. Commissioner, 9 Cir. 1943, 133 F.2d 428. The court held that the decedent's claim for refund of income taxes was a part of the decedent's gross estate; that the value of the claim was the fair market value as between a willing buyer and a willing seller at the time of the decedent's death. Instead of determining the fair market value, the Board had arbitrarily used the amount of the recovery. The Ninth Circuit remanded the case for a proper finding. On remand, the Board found that at the time of decedent's death the fair market value of the claim was $4000 as against $8000 recovered in the taxpayers' refund action. Estate of Harriet E. Barneson, 1945, P–H.B.T.A. Memorandum Decisions ¶ 45,129. Later cases support Barneson, at least by implication. See e. g., Duffield v. United States, E.D.Pa.1955, 136 F.Supp. 944; Estate of Isaac W. Baldwin v. Commissioner, T.C. Memo. 1959–203 D.N. 9446. Many of the cases the Government cites do not involve a determination of "fair market value".[1]

■ The Treasury Regulation applies the "willing buyer and seller test" to all questions of valuation. Reg. § 20.2031–1(b). When, as in this case, the claim cannot be lawfully sold or assigned, the test approaches the outer limits of an acceptable test. However, we cannot say that the regulation exceeds the statutory authority of the Treasury. And the test probably cuts across the board with a minimum of harm about as well as any other test that might be devised. See Frank, J. in Commissioner of Internal Revenue v. Marshall, 2 Cir. 1942, 125 F. 2d 943, 141 A.L.R. 445.

■ Applying the willing buyer and seller test to the claim for income tax refund, we see no reason for concluding that the amount of the settlement necessarily represents the fair market value of the claim at the date of death. The amount of the settlement is relevant but not conclusive.

The issue was a factual one for the jury. The record supports the trial judge's denial of the motions for a directed verdict and a judgment n. o. v.

## II.

"A motion for new trial (Fed.R.Civ.P. 59) unlike the motion for directed verdict or for judgment n. o. v. * * * is addressed to the sound discretion of the trial court; and the grant or denial of a motion for new trial is not reviewable, except where the trial court acts under the compulsion of a mistake of law, or lacks power to grant the motion, as where the motion is not timely, or where the court failed to exercise its discretion, or where it abuses its discretion. And a motion for a new trial on the ground that the verdict is against the weight of the evidence and the trial court's ruling thereon are within the foregoing principles." 6 Moore, Federal Practice § 59.08 at 3816.

If the jury had found that, based on "a reasonable knowledge of relevant facts" (Reg. § 20.2031–1(b)), the claim

---

1. E. g., Commissioner of Internal Revenue v. Estate of Shively, 2 Cir. 1960, 276 F.2d 372; Rose v. United States, 10 Cir. 1942, 128 F.2d 622.

for a tax refund, at the moment of the decedent's death, had a much smaller value than the amount of the settlement, we would not question the jury's finding. But there is no rational basis in the evidence for the jury to bring in a verdict that the claim had no value.

■ For estate tax purposes, a value must be fixed for each asset in a decedent's estate. Reg. §§ 20.2031–1(b) and 20.2031–2 through 20.2031–7. The regulations define "value" as "fair market value". This is the "price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts". Reg. § 20.2031–1(b).

Reasonable knowledge of the relevant facts would have revealed to the decedent and his accountant, as later discovered by present counsel, that there were gross errors in the revenue agent's report sent to the decedent nine months before his death. And reasonable knowledge of decedent's records would have led the decedent, his accountant, attorney, and executors to know that a certain memorandum tended to rebut the Commissioner's finding of fraud. All of the records were in existence and among the decedent's papers when he died.

In similar circumstances the Tax Court has held that the later discovered facts determine the value of the property at the date of death: The Tax Court said:

"Even if the executors were totally ignorant of the claim, we do not agree that it would for that reason be without value. An estate may possess many assets, tangible and intangible, of which the deceased's representative or even the deceased himself may be unaware, and which may not become apparent until the lapse of a substantial period of time after death. Such property is for that reason no less an asset of the estate, nor can it necessarily be said to be valueless at the date of death. This is particularly true where, as here, the asset is one which by its nature is discoverable in the ordinary course of administration of the estate." Estate of I. W. Baldwin, 1959, P–H. T.C. Memo ¶ 59,203.

The administration of every estate involves a delay before the succession representative knows all the relevant existing facts affecting the value of the property. The federal estate tax law is sufficiently flexible and realistic to take account of this delay.

The taxpayer contends that what brought the claim into being was a memorandum Mr. Thompson "discovered [October 1956] among a bunch of old papers that appeared to be of no value". This memorandum concerned the sale of seven bales of cotton for $5,954.80. In one corner, in the decedent's handwriting, were the words "income taxes". One of the executors testified that the memorandum showed that the decedent "had no intention to defraud, and it would be impossible for the agent to go further back than three years in the investigation".

■ This discovery may have affected the taxpayer's appraisal of the claim. But the claim existed wholly apart from the memorandum. The "willing buyer and seller" are a hypothetical buyer and seller having a reasonable knowledge of relevant facts. It is impossible to believe that Congress intended valuation to be tested subjectively according to the state of mind of the executor making the return in question, the valuation depending on whether he was diligent and efficient in examining the decedent's records.

■ In any event, the relevancy of the memorandum to the issue of valuation does not mean that all other evidence is irrelevant. The record shows conclusively that the claim had value and was considered to have value wholly aside from the memorandum. The original attorney for the estate, just a few days after the decedent's death, December 27, 1955, recommended that the executors employ Mr. Thompson to inquire into the possibility of income tax refunds. March

22, 1956, within three months after the date of death, the executors engaged Mr. Thompson to make "a detailed investigation into the financial affairs and transactions" of the decedent. A week later they authorized him to file claims for refund of income taxes. By that time he had been "going through the records * * * and had come up with some evidence that several mistakes had been made". April 5, 1956, the estate's preliminary estate tax notice referred to a "contingent claim pending for refund of taxes, penalties, and interest on Fed. and State income taxes". Thus, there is no doubt that before the discovery of the memorandum in October 1956, the executors, knew that the estate had a claim worth something. The executors, attorneys, and accountants simply had not sufficiently examined the decedent's records to be able to make an intelligent guess as to the value of the claim and to support the claim with evidence. But the evidence was always there to be found. The revenue agents testified that as soon as the full facts were known to them or to their superiors, the value of the claim was accepted. Mr. Thompson testified that all of the relevant facts existed at the time of Simmons's death, and that with full knowledge of these facts he reluctantly recommended that the estate settle for $4200. He would have discovered the agents' errors along with the memorandum had Simmons retained him. In short, ignorance of the value of an asset at the time of a decedent's death does not justify treating the asset as valueless, any more than ignorance of the existence of an asset, discovered after the date of death, justifies exclusion of the asset from the decedent's gross estate.

■ Finally, although we do not accept the extreme position taken by the Government, that the amount of the compromise was necessarily the value of the claim at the time of death, that amount is certainly highly indicative of the fact that the claim had value at the time of Simmons's death.

■ We are conscious of the limited scope of appellate review of a judgment entered on a jury's verdict. But as Judge Rives has said:

> "[T]his Court owes a duty not as a mere automaton, but as a judicial function to determine whether there is really a rational basis for a jury's verdict. * * * Unless every jury verdict in cases of this kind is to be upheld, this one should be set aside * * *." Cole v. Usry, 5 Cir. 1961, 294 F.2d 426, at 430.

■ Considering this case in its entirety, we conclude that the controlling facts make it utterly unreasonable for the jury to bring in a verdict that the refund claim had no value at the time of the decedent's death. The absence of any rational basis for the jury's verdict makes it a mistake of law for the trial judge to deny the motion for a new trial.

### III.

■ The appellant also objected to the district court's charge to the jury.[2]

2. "I charge you that the standard of value contemplated by the estate tax statute is the fair market value of property at the time of the owner's death which fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither under compulsion to buy or sell.

"Time of death, as used in provision requiring assets to be included at their value at date of death of decedent, means the exact moment of death.

"Also Gentlemen, one of the important issues in this case is the value, if any, of the taxpayer's contingent claim for refund of income taxes. The value, if any, to be determined by you is the fair market value on the date of death of the decedent. You have heard evidence of the final refund received by the estate; however, this does not determine the fair market value of the claim at the date of death.

"In determining the value of the claim for refund, if any, you may consider the fact that the Government denied the claim upon receipt thereof and that it was necessary to bring an action in court before the Government would make refund." (Emphasis added.)

We consider that the charge was generally correct although, in the circumstances of this case, on remand the court should eliminate the words "if any", to remove the implication that the jury was free to find that the claim had no value. We suggest, too, that without unduly complicating the charge, the court add a sentence to inform the jury that "reasonable knowledge of relevant facts", within the meaning of Reg. 20.2031 includes knowledge of documents in existence at the time of death and later discovered by the estate's attorney. The judgment below is reversed and remanded.