ESTATE OF LUIGI BIAGIONI, F. M. LUCACCINI, Executor, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Biagioni v. Commissioner
Docket No. 163-79.
United States Tax Court
T.C. Memo 1981-660; 1981 Tax Ct. Memo LEXIS 80; 42 T.C.M. (CCH) 1663; T.C.M. (RIA) 81660; November 16, 1981. *80 Held, value of chose in action at date of decedent's death determined. Oscar Budd Kleinfeld, for the petitioner Leo A. McLaughlin and Catherine Wong, for the respondent. SIMPSON
MEMORANDUM OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $ 82,245.00 in the Federal estate tax of the Estate of Luigi Biagioni. After a concession by the petitioner, the only issue to be decided is the value, at the date of the decedent's death, of a claim brought by the decedent in the California courts for flood damage to his property. All of the facts have been stipulated, *81 and those facts are so found. The decedent, Luigi Biagioni, died on February 17, 1975. The executor of his estate, F. M. Lucaccini, resided in Stockton, Calif., when the petition in this case was filed. A Federal estate tax return was filed for the decedent's estate with the District Dcirector of Internal Revenue, San Francisco, Calif.
On June 21, 1972, a levee on the San Joaquin River in California failed and caused flooding in the Sacramento-San Joaquin delta (commonly known as the Isleton flood). Property in the delta owned by the decedent was damaged as a result of the flood. On approximately September 19, 1972, the decedent retained Forrest M. Greenberg to represent him in an action to recover damages caused by the flood. The decedent agreed to pay Mr. Greenberg one-third of any recovery as a fee for his legal services. Under California law, anyone who wishes to file a claim against a public entity in court must first file the claim with the entity itself. See Cal. Govt. Code secs. 910 and 945.4 (West 1980). Hence, on approximately September 25, 1972, Mr. Greenberg filed with the Brannan-Andrus Levee Maintenance District (Brannan-Andrus), Sacramento County, and with *82 the State of California claims seeking $ 235,925 in damages from such entities. Such claims consisted of $ 185,925 of itemized damages and $ 50,000 of other general amages. Subsequently, on approximately January 26, 1973, a class action seeking damages of $ 52 million was filed in the California Superior Court for Sacramento County on behalf of the victims of the Isleton flood against the same entities and against Joe W. Richards and Dutra Dredging Company. Mr. Greenberg did not directly participate in the filing of the class action; but he arranged to have the decedent included as a plaintiff, and he agreed to share his one-third fee from the decedent with the attorneys who directed such action. Prior to the trial of the class action, defendant Joe W. Richards settled his potential liability by paying $ 200,000 to the plaintiffs, and defendant Brannan-Andrus settled its potential liability by paying $ 1 million to the plaintiffs. [1] The claims against Sacramento County and the State of California went to a jury trial on approximately August 23, 1977. The jury found the State but not the county liable. Subsequently, the Superior Court entered judgment against the State. On *83 approximately February 8, 1978, Mr. Lucaccini, on behalf of the petitioner, agreed with the attorneys who were directing the class action to reduce the decedent's claim for damages from $ 235,925 to $ 165,000. The State of California appealed the judgment of the Superior Court, and the plaintiffs appealed the judgment denying them recovery of litigation costs and attorney's fees. The plaintiffs also appealed the portion of the judgment which reflected the trial court's order the damages were to be reduced by the amount of nonreimbursable Federal disaster benefits received by them. Prior to the decision on appeal, $ 9 million was paid to the plaintiffs by Lloyds of London on behalf of the State. Such payment was made under a liability insurance policy which required the State to pay the first $ 2 million of any judgment or settlement, and the payment was made in full settlement of the State's liability in excess of $ 2 million. *84 Despite such payment, the State refused to pay any part of its $ 2 million liability and insisted on pursuing the appeal. On November 13, 1979, the Third District California Court of Appeal reversed the Superior Court judgment against the State on the ground that, as a matter of law, such court should not have submitted the class action to the jury. Galli v. State of California, 159 Cal. Rptr. 721, 725-726, 98 Cal. App. 3d 662. Such court also affirmed the verdict in favor of the county. On January 24, 1980, the Supreme Court of California denied a hearing in the matter. As of December 3, 1979, $ 10,330,000 was available for distribution to the individual plaintiffs in the class action. [2] Of such amount, the decedent's share was $ 104,560.50. The attorneys' fees on the decedent's share were $ 34,850.01, and on approximately December 3, 1979, the petitioner received a check for the balance, $ 69,710.49. Accompanying the payment was a letter from Melvin Belli, one of the attorneys directing the class action. In part, Mr. Belli's letter read: *85 We want to impress upon you fact that this does not represent a final disposition of these cases and that at some future date, upon final resolution of the cases, some additional sum will be forthcoming. Certainly, you will receive your prorata share of whatever sums remain on hand, even if we lose the cases. Of course, if we obtain any further funds, they will be added to the amounts available for distribution in the future. We will keep you posted on future developments. As of the date of the submission of this case, an additional $ 57,247.38 remained to be distributed among, the class action plaintiffs. The decedent's share of such amount, before the payment of attorneys' fees, was $ 596.90. On the Federal estate tax return filed for the petitioner, Mr. Lucaccini listed as property owned by the decedent the claim for damages caused by the Isleton flood. Mr. Lucaccini listed the value of the claim as zero and included the following statement: "The claim is valued at zero since actual value is unknown." In the notice of deficiency, the Commissioner determined that at the date of the decedent's death the value of the claim was $ 235,925. The sole issue for decision is *86 the value, at the time of the decedent's death, of his claim for damages arising from the Isleton flood. The petitioner contends that the value of such claim at the date of the decedent's death was its pro rata share of the settlement payments made by Joe Richards and Brannan-Andrus, since such amount was not contingent on the outcome of litigation with respect to the State's liability. Alternatively, the petitioner contends that the value of the claim is limited to the amount actually received, $ 69,710.49, plus its net share (after attorneys' fees) of the amount to be distributed among the class action plaintiffs, § 398.00, a total of $ 70,108.49, and that such amount should be discounted to reflect the delay in receiving it. The Commissioner contends that the value of the claim for estate tax purposes is the full face amount of such claim, $ 235,925.00.
Section 2031 of the Internal Revenue Code of 1954[3] provides that the value of the gross estate shall be determined by including the value at the time of the decedent's death of all property, real or personal, *87 tangible or intangible. Section 2033 provides that the value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death. As used in such sections, the term "property" encompasses all choses in action, and the fact that the decedent's claim was contingent does not preclude the inclusion of such claim in his gross estate. United States v. Simmons, 346 F. 2d 213 (5th Cir. 1965); Bank of California v. Commissioner, 133 F. 2d 428 (9th Cir. 1943), affg. in part and revg. in part Estate of Barneson v. Commissioner, a Memorandum Opinion of this Court dated May 27, 1941; Estate of Curry v. Commissioner, 74 T.C. 540 (1980); Duffield v. United States, 136 F. Supp. 944 (E.D. Pa. 1955). Rather, the contingent nature of the claim bears on the question of valuation. Estate of Curry v. Commissioner, supra at 546. *88 What is fair market value is inherently a question of fact to be resolved from a consideration and weighing of all relevant evidence in the record. Kaplan v. Commissioner, 43 T.C. 663, 665 (1965). Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Sec. 20.2031-1(b), Estate Tax Regs.; see sec. 20.2031-9, Estate Tax Regs. The petitioner bears the burden of proving the Commissioner's determination to have been erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering, 290 U.S. 111 (1933). Unfortunately, the petitioner has failed to introduce the kind of evidence which would allow us to form a precise analysis of the fair market value of the claim as of the date of the decedent's death. Compare Estate of Curry v. Commissioner, supra, where the Court was presented with detailed evidence as to the exact stage of the litigation at the time of the decedent's death, the past success of similar litigation, the impact *89 of the delay on the value of the claim, and the possibility of competing claims for the amount of the expected recovery. Both the petitioner's primary and alternative arguments are premised on events occurring after the decedent's date of death. However, the issue is the value of the claim as of the decedent's date of death, not at some future date, and it is well settled that such value is not controlled by the amount of the recovery or events occurring subsequent to the decedent's death. American Nat. Bank & Trust Co. v. United States, 594 F. 2d 1141, 1144-1145 (7th Cir. 1979); United States v. Simmons, supra; Bank of California v. Commissioner, supra; Estate of Curry v. Commissioner, supra.Also, the petitioner has not shown whether or not it or the decedent received any Federal disaster benefits to which they may have been entitled. See Galli v. State of California, 159 Cal. Rptr. at 725. On the other hand, the Commissioner's contention that the full face amount of the claim, $ 235,925, *90 is includable in the decedent's gross estate completely ignores the fact that Mr. Greenberg and the other attorneys to the class action suit were entitled to one-third of any recovery. Also, such contention assumes that prior to the date of trial the claim could have been sold for its face value, but a sale at such a price is not very likely. See American Nat. Bank & Trust Co. v. United States, supra; Duffield v. United States, supra at 947-948 n. 11. What is more, the claim was for itemized damages of $ 185,925 and for other general damages in the amount of $ 50,000. Such general damages may have been mere "padding," and the decedent may not have really expected to recover an amount in excess of his itemized damages. Valuation for estate tax purposes frequently involves difficult and somewhat imprecise calculations. See Estate of Smith v. Commissioner, 57 T.C. 650 (1972), affd. 510 F. 2d 479 (2d Cir. 1975), cert. denied 423 U.S. 827 (1975). However, inexactitude is often a by-product in estimating the value of a claim, such as the one before us, which has no established market value. *91 See Estate of Curry v. Commissioner, 74 T.C. at 551. In light of all the factors presented, and bearing in mind that the petitioner has the burden of proof, we find and hold that, as of the decedent's date of death, the net fair market value of the claim (after attorneys' fees) was $ 105,000. Decision will be entered under Rule 155. Footnotes
1. The report of the Third District California Court of Appeal in the class action (infra↩, p. 5) indicates that Dutra had not been a defendant in the Superior Court, but the record contains no explanation of the failure to bring action against Dutra.
2. ↩
Payment by Joe Richards
$ 200,000.00
Payment by Brannan-Andrus
1,000,000.00
Payment by Lloyds of London
9,000,000.00
Interest
384,769.60
$ 10,584,769.60
Less: expenses of
litigation
$ 176,346.91
funds for
future
expenses
78,422.69
254,769.60
$ 10,330,000.00
3. All statutory references are to the Internal Revenue Code of 1954 as in effect during 1975, unless otherwise indicated.↩