ESTATE OF JEANNE M. HOUSTON, DECEASED, JAMES C. HOUSTON, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Houston v. Commissioner
Docket No. 707-78
United States Tax Court
T.C. Memo 1982-362; 1982 Tax Ct. Memo LEXIS 383; 44 T.C.M. (CCH) 284; T.C.M. (RIA) 82362; June 28, 1982
R. Stuart Jenkins, for the petitioner. David M. Kuchinos, for the respondent. FORRESTER
MEMORANDUM OPINION FORRESTER, Judge: * Respondent has determined a deficiency of $ 188,055.77 in the Federal estate tax of petitioner. Due to concessions, the only issues remaining for decision are: (1) whether the gross estate of the decedent, Jeanne M. Houston, includes the values of claims for damages arising out of the wrongful death of her previously deceased spouse, John C. Houston; and (2) the values of the aforementioned claims. *384 All of the facts have been stipulated and are so found. The decedent died on March 17, 1974. Her son, James C. Houston, is the executor of her estate. He resided in West Chester, Pennsylvania, at the time the petition herein was filed. He filed the Federal estate tax return here involved with the Internal Revenue Service on December 16, 1974. The decedent's previously deceased spouse, John C. Houston (hereinafter John), died on December 23, 1972, as a result of being struck by an automobile while in Michigan five days earlier. On March 17, 1974, the decedent died of natural causes at the age of 49 years. On December 16, 1974, the executor of John's estate (also James C. Houston) filed suit for John's wrongful death in the United States District Court for the Western District of Michigan against Butterworth Hospital and others alleging medical negligence in the treatment of John, and seeking $ 500,000 as redress, inter alia, for the losses suffered by John's heirs (including the decedent). A second wrongful death action was filed on December 18, 1975, against the driver of the automobile that struck John. This action sought damages for the same losses in the amount of *385 $ 150,000. Both actions were settled prior to trial. In November 1979, the parties to the earlier filed action agreed on a $ 130,000 settlement, which net of expenses [1] the court, pursuant to a petition by John's executor, ordered to be paid equally to John's (and the decedent's) surviving children. In early 1980 the second action was settled for $ 2,500, the net proceeds of which ($ 1,515) were distributed by order of the Probate Court to John's and decedent's surviving children. James C. Houston, executor of both the decedent's and John's estates, made no request in his petition to the Federal District Court for distribution of any of the settlement proceeds to the decedent's estate. The parties are in agreement that the laws of the State of Michigan establish what interest, if any, decedent had in the proceeds of the wrongful death actions. The Michigan Wrongful Death Statute provides in pertinent part as follows: 600.2922 Wrongful death Liability of tort-feasors; exclusiveness or remedy Sec. 2922. (1) *386 Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall be brought only under this section. Persons entitled to sue; damages, measure, persons entitled, distribution (2) Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, * * * under all of the circumstances to those *387 persons who may be entitled to such damages when recovered including damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. The amount of damages recoverable by civil action for death caused by wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased. Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action * * * shall be distributed to the surviving spouse and next of kin who suffered * * * injury and in proportion thereto. Within 30 days after the entry of such judgment, the judge before whom such case was tried or his successor shall certify to the probate court having jurisdiction of the estate of *388 such deceased person the amount and date of entry thereof, and shall advise the probate court by written opinion as to the amount thereof representing the * * * loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total * * * loss suffered by the surviving spouse and each of the next of kin of such deceased person, as shown by the evidence * * *. After providing for the payment of the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, the probate court shall determine as provided by law the manner in which the amount representing the total * * * loss suffered by the surviving spouse and next of kin shall be distributed, and the proportionate share thereof to be distributed to the surviving spouse and the next of kin. The remainder of the proceeds of such judgment shall be * * * distributed according to the intestate laws. [Mich. Comp. Laws Ann., sec. 600.2922, as amended by P.A. 1971, No. 65, sec. 1, eff. March 30, 1972.] At the date of John's death the decedent was within that class of persons entitled to recover damages under the above statute. The court in the wrongful death actions found *389 that the settlement was "fair and reasonable, and in the best interests of all parties concerned." It did not, however, make any certification to the Probate Court as to the amount of the judgment representing the loss suffered by the surviving spouse and all of the next of kin and the proportion of such total suffered by each, as required by the wrongful death statute. In its Federal estate tax return petitioner herein deducted $ 7,000 for expenses or estimated expenses associated with the wrongful death actions on behalf of John's estate. In connection with the settlement of those actions, however, all expenses, obligations and attorney fees were paid out of the settlement proceeds before distribution. [2] Petitioner has not included any amount in its estate tax return representing the value of the decedent's interest in the wrongful death claims arising out of her husband's death. In his notice of deficiency respondent *390 has determined that petitioner should have included in the estate tax return the values of these claims, which he calculated to be $ 641,597.90. [3]
The issues to be decided are whether the decedent had a property interest in the wrongful death claims and, if so, the value thereof. Petitioner argues that no such property interest existed, contingent or otherwise. It relies entirely on the fact that the Federal District Court made no distribution of the settlement proceeds to the decedent's estate. Petitioner considers this conclusive of its assertion. Respondent maintains that petitioner's position is not supported in law, and chooses to rely entirely on Federal statutory and decisional law. Sections 2031, [4]2033 and 20.2033-1, Estate Tax Regs., provide that the gross estate shall include *391 the date of death value of all property, whether real or personal, tangible or intangible, beneficially owned by the decedent. This includes the date of death values of all existing claims and choices in action of the decedent that pass to her estate, notwithstanding that they may be contingent and/or uncertain as to amount. Estate of Curry v. Commissioner, 74 T.C. 540 (1980). [5]
The creation of legal interests and rights in property is governed by state law, while Federal law determines what interests or rights so created shall be taxed. Estate of Gamble v. Commissioner, 69 T.C. 942, 948 (1978). The parties are in agreement that in the present case the laws of the State of Michigan establish what interest, if any, the decedent had in the wrongful death claims. *392 Under Michigan statute, which by its own terms constitutes the exclusive remedy for wrongful death, the persons entitled to recover include the surviving spouse and next of kin who suffered injury by reason of loss of the society and companionship of the deceased. Mich. Comp. Laws Ann., sec. 600.2922 (1972). The decedent herein survived her husband's death by some 14 months. Certainly she was caused injury by reason of his wrongful death, and consequently she was entitled to recover under Michigan law. Thus, at the time of her death the decedent had a claim against the alleged wrongdoers, contingent though it was. It is well established under Michigan decisional law that a right of action is a property right. It constitutes a future interest coming within the term "personal property," and "the fact that this property interest is intangible, uncertain as to amount, and not immediately subject to being reduced to possession, does not deprive it of value and transferability." City of Holland v. Township of Fillmore, 363 Mich. 38, 108 N.W. 2d 840 (1961). *393 Thus, the decedent herein did have an interest in personal property under Michigan law, subject to taxation under Federal law. The fact that the decedent's interest in the wrongful death action was contingent upon future recovery by John's estate, and the court's distribution of some or all thereof to her, does not preclude inclusion of it in her gross estate or require that the value be set at zero. See Ithaca Trust Co. v. United States, 279 U.S. 151 (1929); Estate of Van Horne v. Commissioner, 78 T.C. (April 26, 1982); Estate of Curry v. Commissioner, 74 T.C. 540 (1980). [6] Nor does it create a problem that the decedent died prior to the filing of the wrongful death actions or the settlement thereof. Her rights of action accrued at the time of her husband's death and continued in existence, through her estate, beyond her own death some 14 months later. We next must address the more difficult factual issue of the value at the date of her death of the decedent's rights of action. Respondent contends that this value was $ 641,597.90, based primarily upon *394 the combined relief sought in the two wrongful death actions. Respondent's determination is presumptively correct, and petitioner bears the burden of proving otherwise, Welch v. Helvering, 290 U.S. 111 (1933), Rule 142(a), Tax Court Rules of Practice and Procedure. Based on the record as a whole, we are convinced that respondent's determination of value is far in excess of anything which could be considered reasonable. The regulations under section 2031 provide that the valuation of property included in the gross estate shall be the fair market value at the time of the decedent's death -- that price at which the property would change hands between a willing buyer and a willing seller, each with knowledge of the relevant facts and neither acting under any compulsion to buy or sell. Sec. 20.2031-1(b), Estate Tax Regs. In arriving at a proper valuation we must look to all the facts and circumstances surrounding the claim as of the decedent's death. Moreover, in light of the fact *395 that the value of the claim was not fixed as of that date, we may look to subsequent events as evidence of value. Estate of Curry v. Commissioner, supra.
At the time of John's death he was earning $ 30,000 per year as a chemical engineer. Presumably, up to that time he was the decedent's sole source of support. Certainly the loss of income for the 14 months she survived John was substantial and damages should have been recovered therefor. Additionally, the loss of his society and companionship for that period were compensable under the Michigan statute. Although it is impossible to value these losses with exactness we do have some information in the record which sheds light on the amounts thereof. The complaints filed by John's estate sought relief in the total amount of $ 650,000. This included the losses suffered by John's children as well as by the decedent. Undoubtedly, these damages were the most that the plaintiff therein could expect to receive, and it is likely that they were far in excess of the actual expectations. The parties settled in the aggregate for $ 132,500. While the total recovery was awarded to the decedent's and John's children, *396 it apparently included all of the losses suffered by the decedent herein as well. Because the sole beneficiaries of the decedent's estate were her children, it is most probable that any award for the decedent's loss was paid to these persons merely as a matter of expedience. The petitioner has presented no evidence regarding the losses suffered by the decedent's children as a result of their father's death. Nor has it presented us with any facts which would indicate that the decedent's loss would be less than theirs. On balance, and in view of the obvious losses suffered by the decedent, the amounts sued for, the amounts of the settlements, and the contingent nature of the claims at the date of her death, we hold that the value of the decedent's wrongful death claims at the date of her death was $ 75,000. [7] While it may seem anomalous that the amount to be included in the gross estate exceeds the actual net recovery from the wrongful death actions, the latter is not controlling in the determination of date of death value. United States v. Simmons, 346 F.2d 213 (5th Cir. 1965); *397 Bank of California v. Commissioner, 133 F.2d 428 (9th Cir. 1943). [8] Furthermore, we are not sympathetic to petitioner's plight, as it chose not to present any evidence which would tend to lead to a different result. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
*. This case was submitted (fully stipulated) to Judge Sheldon V. Ekman, who died on January 18, 1982. By order of the Chief Judge dated February 16, 1982, this case was reassigned to Judge Bruce M. Forrester↩ for disposition.
1. The total proceeds of settlement net of expenses was $ 48,133.31. Each of John's three surviving children received $ 16,044.44.↩
2. The parties are in agreement that in the event no amount in excess of the net proceeds of the wrongful death settlement is includable in the decedent's gross estate the deduction claimed by the petitioner for litigation expenses should be disallowed.↩
3. Respondent arrived at this figure by adding the prayers for relief in each cause of action ($ 500,000 plus $ 150,000) and subtracting $ 3,402.70 for medical expenses, and $ 5,000 attributable to pain and suffering. This figure should be $ 641,597.30. The 60 cents discrepancy is not explained.↩
4. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue. ↩
5. See also Estate of Baldwin v. Commissioner, T.C. Memo. 1959-203↩.
6. See Estate of Baldwin v. Commissioner, T.C. Memo. 1959-203↩.
7. In light of our holding herein, respondent apparently concedes that petitioner is entitled to deductions claimed by it for expenses associated with the wrongful death actions. See n. 2, supra↩. 8. Estate of Baldwin v. Commissioner, T.C. Memo. 1959-203↩.