ESTATE OF RUSSELL E. ALDRICH, DECEASED, GRACE MARIE ALDRICH, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Aldrich v. Commissioner
Docket No. 5553-81.
United States Tax Court
T.C. Memo 1983-543; 1983 Tax Ct. Memo LEXIS 247; 46 T.C.M. (CCH) 1295; T.C.M. (RIA) 83543; September 1, 1983. *247 Prior to his death, decedent entered into a contingent fee arrangement whereby he was to share in the proceeds of a medical malpractice suit. The executrix of the estate elected the alternate valuation date for purposes of determining the value of decedent's gross estate. Secs. 2032(a) and 2033, I.R.C. 1954. Decedent's estate and law firm received $79,538.87 pursuant to this arrangement after the date of death but before the alternate valuation date. Held, the value of the gross estate includes the value of the contingent fee arrangement. Secs. 2031 and 2033. Held further, the value of the fee is $79,538.87, which was received prior to the alternate valuation date. Sec. 2032. James E. Coombs, and Raymond M. Pezzo, for the petitioner. Bradford A. Johnson, for the respondent. STERRETT
MEMORANDUM OPINION STERRETT, Judge: By notice of deficiency mailed to the petitioner on or about December 18, 1980, respondent determined a deficiency in petitioner's estate tax liability of $25,474.78. The issue for our determination is whether the decedent's gross estate as defined in section 2031, I.R.C. 1954, included the decedent's interest in a contingent legal fee arrangement for a case *248 that was unsettled at the date of decedent's death. Further, if we decide that the fee should be included, we must determine the value of the arrangement where the executrix, as provided in section 2032, chose to value the estate on the alternate valuation date by which time the case was settled and the fee paid to the decedent's estate. The facts in this case have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Grace Marie Aldrich was the wife of the decedent, Russell E. Aldrich. She was appointed executrix of the decedent's estate (hereinafter petitioner) by the Dutchess County Surrogate's Court, Poughkeepsie, New York, under the terms of decedent's Last Will and Testament. Mrs. Aldrich resided in the Town of La Grange, New York at the time of filing the petition herein. Russell E. Aldrich (hereinafter decedent) and Albert P. Roberts were associates engaged in the practice of law. The two agreed to represent a client on a contingency basis in a medical malpractice suit. The decedent and his associate, Roberts, thereafter *249 engaged the services of Arthur Braiman, a medical malpractice attorney. The three attorneys agreed to split the fee as follows: Decedent
25 percent plus $10,000
Roberts
25 percent less $10,000
Braiman
50 percent
The dates of these events are not clear from the stipulated facts. On April 9, 1977 decedent died. Approximately 2 months after decedent's death, the case was settled for a total of $1,330,000. Pursuant to the fee agreement, the following entities received the following payments: $11,628.42 to the Estate of Russell E. Aldrich $50,700.00 to the Estate of Russell E. Aldrich $61,000.00 to Albert P. Roberts, Esq. $17,210.45 to the Aldrich law firm In the Federal estate tax return filed by Mrs. Aldrich on or before January 9, 1978 with the District Director of Internal Revenue, Albany District, she elected to value the decedent's estate on the alternate valuation date as provided in section 2032. She also excluded the value of the contingent fee from the gross estate. In his notice of deficiency, respondent asserted that petitioner had incorrectly excluded from the value of decedent's gross estate the sums paid pursuant to the fee arrangement totaling $79,528.87. [1] *250 The first issue for decision is whether the value of this fee arrangement should be included in the decedent's gross estate. Section 2033 provides: The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death. Section 20.2033-1(a), Estate Tax Regs., provides in pertinent part as follows: The gross estate of a decedent * * * includes under section 2033 the value of all property, whether real or personal, tangible or intangible, and wherever situated, * * *. Both the statute and the accompanying regulation seem unequivocal in directing that all property which decedent owned at death must be included in the gross estate. The case law tells us that the estate includes any rights to income or choses in action which remain unpaid at the time of decedent's death, but not income the right to which accrues after decedent's death. Thus, it is clear that the right to fees earned by a lawyer before his death, but unpaid until after his death, must *251 be appraised and included in the value of the estate. The speculative nature of the fee, such as the contingent fee which is involved herein, does not preclude inclusion of the right to the fee in the decedent's estate, but merely affects the value assigned to the right to the fee for the purposes of the estate tax. This Court disposed of the matter in Estate of Curry v. Commissioner,74 T.C. 540 (1980), [2] noting: The fact that the legal fees we are concerned with were contingent upon future recovery by the Indian tribes is a critical consideration in trying to determine what the contract right was worth as of the date of death. However, the contingent nature of the contract right must bear in the factual question of valuation. It cannot, as a matter of law, preclude the inclusion of the interest in decedent's gross estate or command that the value be fixed at zero. * * * [3] [Estate of Curry v. Commissioner,supra at 546.] In *252 light of this Court's holding in Curry, petitioner's reliance upon Nemerov v. Commissioner,T.C. Memo 1956-164, is misplaced. [4] Furthermore, this Court observed that Nemerov did not "establish a rule of law that contingent legal fees are, simply by virtue of their contingency, automatically excluded from the gross estate." Estate of Curry v. Commissioner,supra at 546, n. 4. See Duffield v. United States,136 F.Supp. 944 (E.D. Pa. 1955). Petitioner notes that this contingent fee had no fair market value because it could not be sold under state law. Again, however, this factor would affect the valuation of the right rather than prevent inclusion of such value in the estate. Bank of California v. Commissioner,133 F.2d 428 (9th Cir. 1943). Petitioner also seems to indicate that, since this amount is included in the estate income tax return, it should be excluded from the estate tax return. Section 691(a) does provide that the amounts received after the date of death, but which are income in respect of *253 a decedent, will be included in the estate's income tax return. However, section 691(c) contemplates that an item may be included in both the estate tax return and the estate income tax return, and thus provides for a deduction to offset the double accounting. Since the right to his income arose before decedent's death, cases excluding income, the right to which arose after death, from an estate are inapposite. Thus, while it is true that rent, dividends, or interest which accrues after the date of death is excluded from the estate even though the executor elects the alternate valuation date, Maass v. Higgens,312 U.S. 443 (1941), the right to such income which decedent acquired before his death should be valued and included in the estate.
Petitioner's reliance upon Mandel v. Sturr,266 F.2d 321 (2d Cir. 1959), is also misplaced. There, decedent was a partner in a partnership at the date of death. The executor valued the decedent's interest in the partnership and included the value in the gross estate. The partnership agreed to pay this amount to the estate in monthly installments at 6-percent interest. However, the partnership failed to make the first several payments. It therefore *254 agreed to pay the estate certain additional amounts by reason of the failure to make these first few payments. The Court of Appeals for the Second Circuit held that these additional sums should be excluded from the gross estate because they arose from claims which the estate acquired against the partnership subsequent to decedent's death. The right to the fee in the instant case is similar to the partnership interest in Mandel in that both are interests which decedent owned before death. The contingent fee agreement does not parallel the item excluded from the estate in Mandel because this fee agreement arose, as a result of decedent's personal efforts, before his death. Accordingly, we hold that the value of the contingent fee is to be included in the decedent's estate.
The second issue for the Court's consideration is the question of how the contingent fee should be valued. Petitioner chose the alternate valuation date for valuing decedent's estate pursuant to section 2032 which permits the executrix to value the estate as of the date 6 months after decedent's death except that, [i]n the case of property distributed, sold, exchanged, or otherwise disposed of, within 6 months *255 after the decedent's death such property shall be valued as of the date of distribution, sale, exchange or other disposition. Section 2032(a)(1). Here, the malpractice case was settled within the 6-month period following decedent's death and a total of $79,538.87 was paid to decedent's estate and decedent's law firm. Respondent insists that the value of the contingent fee arrangement should be equivalent to the amount actually received pursuant to the fee agreement during the 6-month period between the decedent's death and the alternate valuation date. Petitioner, on the other hand, lists a number of factors which he contends should lower the valuation. Primarily he suggests that the speculative nature of the decedent's rights under the fee agreement and under New York law should reduce the value of the agreement. The Court concedes that the value of the agreement as of the date of death might have been quite low. The estate could not have sold the rights. Because of the contingent nature of the fee, had the client recovered nothing, the estate would have received nothing. Petitioner points out that the client could have discharged the decedent and that, in any case, once the *256 decedent died the decedent's estate could have received, at best, the value of the services decedent had actually rendered in quantummeruit. Even if we were to concede petitioner's view of decedent's right under state law, the fact remains that within 6 months after decedent's death, the decedent's estate and law firm had received $79,538.87. Nothing in the record suggests that this sum was in the nature of a gift or anything other than payment of the fee agreement. Section 2032(a) requires that where the executor chooses the 6-month alternate valuation date, assets disposed of on any date within the 6-month period must be valued on the date of disposition. Here, within 6 months of decedent's death, the claim under the fee agreement was replaced by $79,538.87. That seems to be a sufficient indication of the value of the claim for estate tax purposes under section 2032. Estate of Hull v. Commissioner,38 T.C. 512 (1962), revd. on other grounds, 325 F.2d 367 (3d Cir. 1963), is helpful. in that case, upon the death of a partner in a law firm, the partner's estate was entitled to a portion of the net profits of the partnership on December 31 of each of several successive years following *257 the partner's demise. The partner died on February 2, 1957, and the executor chose to value the estate under section 2032 which at that time provided an alternate valuation date of 1 year after decedent's death, or February 2, 1958. The court decided that the value of the right to receive these payments was to be included in decedent's estate. Moreover, it decided that this valuation could be determined using all facts known up until February 2, 1958, the alternate valuation date. Thus, the right was valued in accordance with a compromise agreement which the estate and the law firm had reached during the 1-year interim. Also, the December 31, 1957 payment was included in the gross estate and the 1957 net profits figure was used in determining the projected value for payments after 1957. When an election is made to use the alternate valuation date, the task is to determine the value of the property interest transferred at the time of death, * * * as of a date 1 year subsequent to the date of death. Logically, all evidence of value known as of the latter date should be taken into consideration. [Estate of Hull v. Commissioner,supra at 524.] In the instant case, the worth of the *258 contingent fee agreement to the decedent's estate was known for certain by the alternate valuation date because the estate had already received cash for the right. This Court knows of no reason to choose any value other than the amount actually received. [5]
Based upon the foregoing, we hold that the value to be included in decedent's estate by virtue of the contingent fee agreement is $79,538.87. Decision will be entered for the respondent.
Footnotes
1. The Notice of Deficiency states the total as $79,528.87, but respondent alleges in his brief that that figure is in error by $10, the fee actually received was $79,538.87.
2. It is surprising that while respondent cites this case in his brief, the petitioner nowhere even mentions Curry,↩ let alone attempts to distinguish it, even in its reply brief. 3. See also Estate of Houston v. Commissioner,T.C. Memo. 1982-362; Estate of Biagioni v. Commissioner,T.C. Memo. 1981-660↩.
4. In that case, this Court held that because of their speculative nature, contingent fee arrangements should be excluded from the estate. Nemerov v. Commissioner,T.C. Memo. 1956-164↩.
5. Cf. Pridmore v. Commissioner,T.C. Memo. 1961-12↩.